MATTHEW C. HELLAND (SBN 250451)
*helland@nka.com*
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

H. CLARA COLEMAN (admitted *pro hac vice*)
*ccoleman@nka.com*
NICHOLS KASTER, PLLP
80 S. 8th Street, Suite 4700
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

PETER RUKIN (SBN 178336)
*prukin@rukinhyland.com*
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

RACHEL DEMPSEY (SBN 310424)
*Rachel@TowardsJustice.org*
TOWARDS JUSTICE
2840 Fairfax Street, Suite 220
Denver, CO 80207
Telephone: (720) 441-2236

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISABELLA SAVINI MERANTE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INSTITUTE FOR FOREIGN STUDY, INC, a Connecticut Company,<br><br>Defendant. | **CASE NO.: 21-cv-03234-EMC**<br><br>**FIRST AMENDED COMPLAINT FOR CIVIL PENALTIES PURSUANT TO THE PRIVATE ATTORNEYS GENERAL ACT (LABOR CODE §2698, *et seq.*) AND FOR CLASS RELIEF FOR WAGE STATEMENT PENALTIES (LABOR CODE §226)**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

FIRST AMENDED COMPLAINT

Plaintiff Isabella Merante complains against American Institute for Foreign Study, Inc. d/b/a Au Pair in America ("Au Pair in America" or "Defendant") as follows:

**INTRODUCTION**

1.  Plaintiff Isabella Merante brings this action under the California Labor Code Private Attorneys General Act, Labor Code § 2698, *et seq.* ("PAGA"). Through this action, Plaintiff Merante seeks to recover civil penalties on behalf of herself and other current and former au pairs for Defendant's violations of Cal. Labor Code §§ 201, 203-204, 221, 224, 226, 226.7, 510, 1174, 1194, 1194.2, 1194.5, the Industrial Welfare Commission Minimum Wage Order, and Industrial Welfare Commission Wage Order 15.

2.  Plaintiff further brings this action pursuant to Rule 23 of the Federal Rules of Civil Produce for failure to provide lawful wage statements under California Labor Code § 226. Plaintiff brings this claim on behalf of all current and former au pairs for the Defendant in California since January 8, 2020 (the "Class Period").

3.  Defendant recruits, trains, and employs in-home childcare workers who work in the United States on J-1 au pair visas. According to the United States Department of State, approximately 2800 J1 visa au pairs work in California each year. A significant portion of these California au pairs are recruited, trained, placed, and employed by Defendant. Defendant is an "employer" pursuant to Section 18 of the Labor Code and "employs" au pairs within the meaning of the Wage Order.

4.  Defendant's pay practices violated numerous provisions of Wage Order 15, the Minimum Wage Order, and the Labor Code. Defendant: (1) failed to pay minimum wage (Cal. Labor Code §§ 1194, 1194.2, and 1194.5; Minimum Wage Order); (2) failed to provide meal periods (Cal. Labor Code § 512); (3) failed to timely pay all wages owed (Cal. Labor Code § 204); (4) made illegal deductions from wages or took illegal credits against minimum wage, including for housing and meals (Cal. Labor Code §§ 221 and 224; Wage Order 15); (5) failed to maintain records showing hours worked, breaks taken, and value of room and board provided (Cal. Labor Code §§ 226, 226.17, 512 and 1174; Wage Order 15); (6) failed to provide lawful wage statements (Cal. Labor Code § 226; Wage Order 15) and (7) failed to pay overtime (Cal.

1  Labor Code §§ 510 and 1194; IWC Wage Order 15).

2      5.    Plaintiff challenges Defendant's pay practices and seeks civil penalties for
3  Defendant's violations of the California Labor Code, Minimum Wage Order and the Industrial
4  Welfare Commission Wage Order.

5      6.    Plaintiff, on her own behalf and on behalf of the Class Members, further seeks
6  relief for Defendant's failure to provide lawful wage statements pursuant to Cal. Labor Code §
7  226.

## THE PARTIES

9      7.    Plaintiff and representative Isabella Merante resides in the City of Tiburon in the
10  County of Marin, California. She worked for Defendant as an au pair in California from May
11  2019 to May 2021. For approximately the first year of her employment, from May 2019 to June
12  2020, Plaintiff Merante worked for Defendant in San Francisco. For approximately the second
13  year of her employment, from June 2020 to May 2021, Plaintiff Merante worked for Defendant
14  in Marin County.

15      8.    Defendant American Institute for Foreign Study, Inc. d/b/a Au Pair in America is
16  a Connecticut company doing business in California. Its principal place of business is in
17  Connecticut.

## JURISDICTION AND VENUE

19      9.    This Court has jurisdiction over all causes of action asserted herein pursuant to
20  the California Constitution, Article VI, Section 10, which grants the Superior Court original
21  jurisdiction in all cases except those given to other trial courts.

22      10.    Plaintiff seeks damages exceeding the jurisdictional minimum of this Court.

23      11.    Venue in the County of San Francisco is proper under California Code of Civil
24  Procedure section 395.5 because a significant portion of the unlawful conduct at issue in this
25  case occurred in the County of San Francisco. Specifically, Plaintiff and representative Merante
26  worked as an au pair in the City and County of San Francisco from May 2019 to June 2020. In
27  addition, Defendant conducted and continues to conduct substantial business in this County and
28  its liability arose, in part, in this County.

**FACTUAL ALLEGATIONS**

12. Defendant recruits, trains, and employs in-home childcare workers who work in the United States on J-1 au pair visas. According to the United States Department of State, approximately 2800 J1 visa au pairs work in California each year. A significant portion of these California au pairs are recruited, trained, placed, and employed by Defendant.

13. Defendant employs au pairs in the United States, including Ms. Merante, by, among other things, preparing au pairs for their work in the United States, maintaining ongoing contact and supervising their work, and setting their terms and conditions of employment, including the right to terminate or reassign them.

14. Plaintiff signed an Au Pair in America Terms and Conditions agreement, which is attached hereto as Exhibit A. That agreement provides Defendant "may refuse to accept [the] application, or may reject/withdraw an application, at any stage with or without reason" and that Defendant will train Plaintiff to work as an au pair through its Orientation. (Ex. A, pp. 1-2.)

15. The agreement further provides that once in the United States the au pair must "maintain at least monthly contact with [her] Community Counsellor" and that "should a problem arise with [her] Host Family…Au Pair in America may be able to re-match her." (Ex. A, p. 2.)

16. Defendant also controls the scope of the au pairs' responsibilities and working conditions through detailed "Host Family Guidelines," attached hereto as Exhibit B.

17. The Guidelines detail Defendant's extensive role in the hiring and training process. including meeting with the au pairs for in-person interviews to determine if it will accept the au pair into the program. Defendant also controls how au pairs interact with potential host families, requiring them to set up an account and message families through that account. Defendant requires au pairs "keep [the] au pair services team updated" throughout the matching process, and requires the host family confirm the match with Defendant. (Ex. B, p. 13.)

18. Defendant extensively trains au pairs, requiring the au pair "attend an orientation program" that has a "two-fold purpose," including providing "information of a basis level regarding rules and regulations" and "cross-cultural issues, child development, child care safety

and emergency procedures, program guidelines and host family expectations." (Ex. B, p. 8.)

19. The Guidelines further demonstrate the high level of supervision Defendant exercises over Plaintiff and other au pairs. Defendant maintains contact with au pairs through its Community Counselors who are "expected to help the au pair acclimate to the community and monitor the activities of the exchange relationship to ensure they are in keeping with the intent of the cultural exchange child care program established by Au Pair in America." (Ex. B, p. 17.) It requires host families and au pairs initially meet with the Community Counsel to "discuss how things are going so far and address any questions or concerns" and to review the au pair's "schedule of duties and responsibilities." (Ex. B, p. 17.) It further requires the host family and au pair make "ongoing contact" with the Counselor and requires the host family "inform the Community Counsel if leaving the au pair and children in the home with another responsible adult." (Ex. B, p. 17.)

20. Defendant also determines whether an au pair's employment will be terminated or continue. Defendant reserves the right to terminate au pairs from the program, and is involved in setting the standards for requesting a rematch. (Ex. B, pp. 23, 31.) Defendant forbids families from terminating the au pair immediately, instead requiring the host family continue "hosting [the] au pair for a period of up to two weeks" before a rematch. (Ex. B, p. 23.) Further, through its Program Support and Policies Defendant reserves the right to terminate the host families' access to au pairs for violations such as not paying or reducing the au pairs minimum weekly stipend or not allowing or reducing the au pair's free time. (Ex. C, p. 1.)

21. The handbook further provides detailed instructions as to au pair's responsibilities, including, among other things, "feeding, bathing and dressing your child, planning your child's daily activities and playing with your child, supervising and babysitting and transporting your child to school, the local pool or park." (Ex. B, p. 3.) Defendant further dictates the tasks an au pair should not perform, including that "[h]ousework or chores such as vacuuming, mopping, dusting, pet care and total responsibility for cleaning your house is not part of your au pair's responsibilities." (Ex B, p. 3.)

22. Defendant sets tiered pay based on the au pair's level of childcare experience.

1  Defendant instructs host families to pay regular au pairs a minimum weekly "stipend" of $195.75
2  and sets the pay at a minimum of $250.00 for au pairs participating in their "Au Pair
3  Extraordinaire" program. (Ex. C, p. 3.)  The stipend does not include any payment for overtime.
4  On top of this systemic illegal underpayment, Defendant (1) fails to provide meal periods after
5  five hours of work; (2) takes deductions or minimum wage credits—including for meals and
6  housing—that are contrary to California law; (3) fails to keep records of time worked, breaks
7  taken, or meal and housing credits taken against minimum wage as required by California law;
8  (4) fails to compensate au pairs at all for training time; and (5) fails to provide wage statements
9  with required information about pay, deductions, and withholding.

10  23.  Ms. Merante was one of Defendant's au pairs in California, where worked from
11  May 2019 to May 2021. For approximately the first year, from May 2019 to June 2020, Plaintiff
12  Merante worked in San Francisco, California and received a weekly stipend of $200.00 per
13  week. She would receive $15.00 additional for each hour she worked over 45. For approximately
14  the second year, from June 2020 to May 2021, she worked in Tiburon, California and received
15  $250.00 per week with no additional payments. She regularly worked in the home for 10 hours in
16  a day, and regularly worked between 42-50 hours per week. She sometimes worked over 10
17  hours in a day, and would sometimes work up to or over 55 hours. She regularly worked more
18  than 6 hours continuously without being fully relieved of duty for a meal period. Ms. Merante's
19  agreement with Defendant provides that she may work up to 10 hours per day, and up to 45
20  hours per week. It does not provide for payment of overtime.

21  24.  Ms. Merante and other au pairs did not enter into any agreement to credit meals or
22  lodging against Defendant's minimum wage obligations, as required by Wage Order No. 15. As
23  such, the weekly stipend fell far below the minimum wage for the hours Ms. Merante worked.
24  To the extent Defendant seeks credit for the value of any room or board without Ms. Merante's
25  agreement such credit would be an unlawful repayment of wages to the employer and/or an
26  unlawful deduction from wages.

27  25.  Although Ms. Merante and other au pairs were sometimes able to eat a meal while
28  they were working, they remained on duty during those meals. Accordingly, Ms. Merante and

other au pairs often worked work periods of five or more hours without being relieved from duty for a meal period.

26. Upon information and belief, Defendant did not maintain any records of hours worked, breaks taken, or the value of room and board provided for Ms. Merante and other au pairs. Defendant did not provide Ms. Merante and other au pairs with any wage statements whatsoever, much less a wage statement itemizing wages earned, hours worked, rates of pay, the name and address of the employer, deductions taken, net wages earned, the inclusive dates of the period, or the name of the employee.

27. Accordingly, Ms. Merante and other au pairs suffered from the systematic violations described above. Defendant's pay practices violate numerous provisions of Wage Order 15, the Minimum Wage Order and the Labor Code. Defendant has:

    a. Failed to pay minimum wage.

    b. Failed to pay overtime pay.

    c. Failed to provide meal periods.

    d. Failed to timely pay all wages owed.

    e. Made illegal deductions from wages, or taken illegal credits against minimum wage, including for housing and meals.

    f. Failed to maintain records showing hours worked, breaks taken, and value of room and board provided.

    g. Failed to provide lawful wage statements.

28. Plaintiff alleges that these violations are ongoing and continuing and that they affected and continue to affect current and former au pairs who work or have worked for Defendant in California.

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings this action on behalf of herself and as a class action on behalf of similarly situated au pairs. The Rule 23 class is defined as follows:

**Rule 23 Class:** All current and former au pairs who resided with Host Families in California under the AIFS Au Pair in America Program at any time from January 8, 2020

to the date when the Court grants preliminary approval of the settlement.

30. This action is properly brought as a class action pursuant to the class action procedures of Rule 23 of the Federal Rules of Civil Procedure.

31. The class is so numerous that joinder of all members is impractical. While the exact number and identities of class members are unknown at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there hundreds of class members.

32. This litigation is properly brought as a class action because of the existence of questions of fact and law common to Plaintiff and other members of the class which predominate over any questions affecting only individual members, including:

    a. Whether Defendant employed Class Members; and

    b. Whether Defendant knowingly and intentionally failed to provide accurate wage statements.

33. This litigation is properly brought as a class action because Plaintiff's claims are typical of the claims of the class members, inasmuch as all such claims arise from Defendant's standard policies and practices, as alleged herein.

34. Like all class members, Plaintiff was damaged by Defendant's system-wide policies and practices of failing to treat au pairs as employees and failing to provide compliant wage statements, thus giving rise to legal remedies under applicable California labor law.

35. Plaintiff has no interests antagonistic to the interests of other class members.

36. Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in class action litigation. Accordingly, Plaintiff is adequate and will fairly and adequately protect the interests of the class.

37. A class action is an appropriate and superior method for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute separate lawsuits in federal court against large corporate defendants.

38. Class certification is also fair and efficient because prosecution of separate actions

by individual class members would create a risk of differing adjudications with respect to such individual members of the classes, which as a practical matter may be dispositive of the interests of other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests. Plaintiff anticipates there will be no difficulty in the management of this litigation. This litigation presents claims under applicable state wage statutes of a type that have often been prosecuted on a class-wide basis, and the manner of identifying the class members and providing any monetary relief to the class can easily be effectuated from a review of Defendant's records.

**FIRST CLAIM FOR RELIEF**
**CIVIL PENALTIES UNDER LABOR CODE PRIVATE ATTORNEY GENERAL ACT**
**(PRIVATE ATTORNEYS GENERAL ACT, LABOR CODE §2698, *ET SEQ*.)**
**(REPRESENTATIVE ACTION)**

39. The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a claim of relief on behalf of herself and all those similarly situated, as described below.

40. Plaintiff, as an aggrieved au pair/employee, brings this claim under California Labor Code §§ §§ 2698–2699 in a representative capacity on behalf of current and former au pairs of Defendant subjected to the unlawful wage and hour practices alleged herein.

41. The California Labor Code Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 et seq., grants California employees the right to bring a civil action for the violation of any provision of the Labor Code on behalf of themselves and other current or former employees in order to recover civil penalties. PAGA is intended to assist in the achievement of maximum compliance with state labor laws by empowering aggrieved employees to act as private attorneys general in order to recover civil penalties for Labor Code violations that would otherwise be prosecuted by the state. *See Arias v. Super. Ct.* (2009) 46 Cal. 4th 969, 980.

42. PAGA permits an aggrieved employee to collect the civil penalty authorized by law and normally collectible by the California Labor and Workforce Development Agency. To address violations for which no penalty has been established, § 2699(f) creates a private right of

1   action for aggrieved employees and a default penalty in the amount of $100 for each aggrieved
2   employee per pay period for the initial violation, and $200 for each aggrieved employee per pay
3   period for each subsequent violation. *See* Cal. Lab. Code § 2699(f). Plaintiff hereby seeks to
4   collect these civil penalties for Defendant's Labor Code violations, as described below.

**Failure to Pay Minimum Wages**

43. The IWC Wage Orders, California Labor Code §§ 1194 and 11974, and the San Francisco Minimum Wage Ordinance require employers to pay employees at least minimum wage for all hours worked.

44. IWC Wage Order No. 15, § 4(A) provides that "Every employer shall pay to each employee wages not less than the following: (1) Any employer who employs 26 or more employees shall pay to each employee wages not less than the following: (a) Ten dollars and fifty cents ($10.50) per hour for all hours worked, effective January 1, 2017; (b) Eleven dollars ($11.00) per hour for all hours worked, effective January 1, 2018; (c) Twelve dollars ($12.00) per hour for all hours worked, effective January 1, 2019; and Thirteen dollars ($13.00) per hour for all hours worked, effective January 1, 2020.

45. The San Francisco Minimum Wage Ordinance, San Francisco Administrative Code, Chapter 12R.4, provides in relevant part that "(a) Employers shall pay Employees no less than the Minimum Wage for each hour worked within the geographic boundaries of the City. (1) Except as provided in subsection 12R.4(b), the Minimum Wage paid to Employees shall be as follows: (A) Beginning on May 1, 2015, the Minimum Wage shall be an hourly rate of $12.25. (B) Beginning on July 1, 2016, the Minimum Wage shall be an hourly rate of $13.00. (C) Beginning on July 1, 2017, the Minimum Wage shall be an hourly rate of $14.00. (D) Beginning on July 1, 2018, the Minimum Wage shall be an hourly rate of $15.00. (E) Beginning on July 1, 2019, and each year thereafter, the Minimum Wage shall increase by an amount corresponding to the prior year's increase, if any, in the Consumer Price Index for urban wage earners and clerical workers for the San Francisco-Oakland-San Jose, CA metropolitan statistical area, as determined by the Controller." The San Francisco Minimum Wage beginning on July 1, 2019 was $15.59.

46. Labor Code § 1197.1 provides in relevant part that: (a) Any employer or other

person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law, or by an order of the commission, shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203 as follows:

> (1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203.
>
> (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed. This amount shall be in addition to an amount sufficient to recover underpaid wages, liquidated damages pursuant to Section 1194.2, and any applicable penalties imposed pursuant to Section 203.

47. Defendant paid and caused Plaintiff and other au pairs to be paid less than less than the Minimum Wage for each hour worked.

48. Under California Labor Code § 1197.1, Plaintiff seeks to recover a civil penalty of one hundred dollars ($100) for Plaintiff and each underpaid employee per pay period for the initial violation, and two hundred fifty dollars ($250) for Plaintiff and each underpaid employee for each subsequent violation.

**Failure to Pay Overtime Pay**

49. The California Labor Code §§ 510, 1194, and 1197 require employers pay employees overtime compensation to non-exempt employees.

50. California Labor Code § 1454 entitles domestic workers who are also personal attendants to overtime pay at a rate of one and one-half times the regular rate of pay for all hours worked over 9 hours in any workday or 45 hours in any workweek.

51. By the course of conduct set forth above, Defendants violated Cal. Labor Code §§ 510, 1194, and 1454 by failing to pay overtime pay to Plaintiffs and other au pairs when they

1 worked in excess of 9 hours in a day or 45 hours in a week.

2   52.   With respect to violations of Labor Code §§ 510, 1194, and 1454, Labor Code § 558 imposes a penalty of $50 for each aggrieved employee per pay period for the initial violation, and $100 for each aggrieved employee per pay period for each subsequent violation. Plaintiffs hereby seek recovery of these penalties.

53.   Labor Code § 2699(a) provides that, "[n]otwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

54.   Pursuant to Labor Code §§ 558 and 2699(a), Plaintiffs seek to recover penalties for Defendants' violations of Labor Code §§ 510, 1194, and 1454.

**Timely Pay Violations**

55.   Labor Code § 204(a) provides as follows: "All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month. However, salaries of executive, administrative, and professional employees of employers covered by the Fair Labor Standards Act, as set forth pursuant to Section 13(a)(1) of the Fair Labor Standards Act, as amended through March 1, 1969, in Part 541 of Title 29 of the Code of Federal Regulations, as that part now reads or may be amended to read at any time hereafter, may be paid once a month on or before the 26th day of the month during which the labor was performed if the entire month's salaries, including the unearned portion between the date of payment and the last day of

the month, are paid at that time."

56. Labor Code § 204(b)(1) provides as follows: Notwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.

57. Labor Code § 210(a) provides: "In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who fails to pay the wages of each employee as provided in Sections 201.3, 204, 204b, 204.1, 204.2, 204.11, 205, 205.5, and 1197.5, shall be subject to a penalty as follows: (1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld. (b) The penalty shall either be recovered by the employee as a statutory penalty pursuant to Section 98 or by the Labor Commissioner as a civil penalty through the issuance of a citation or pursuant to Section 98.3. The procedures for issuing, contesting, and enforcing judgments for citations issued by the Labor Commissioner under this section shall be the same as those set forth in subdivisions (b) through (k), inclusive, of Section 1197.1."

58. Labor Code § 2699(f) provides: For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: (1) If, at the time of the alleged violation, the person does not employ one or more employees, the civil penalty is five hundred dollars ($500). (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

59. The weekly stipend Plaintiff and other au pairs received failed to compensate them at least the minimum wage for all hours worked. Accordingly, Defendant failed to timely pay Plaintiff and other aggrieved employees their wages due within the intervals required by Labor Code Section 204.

60. Under California Labor Code §§ 210 and 2699, Plaintiff seeks to recover a civil penalty of one hundred dollars ($100) for Plaintiff and each underpaid employee for the initial violation, and two hundred dollars ($200) for Plaintiff and each underpaid employee for each subsequent violation, for every pay period in which late payment occurred.

### **Unlawful Deductions and Credits**

61. Labor Code § 221 makes it unlawful for an employer to collect or receive from an employee any part of wages paid to the employee.

62. Labor Code § 224 prohibits any deduction from an employee's wages which is not either authorized by the employee in writing or permitted by law.

63. IWC Wage Order No. 15, § 10(C), provides, in relevant part, that "Meals or lodging may not be credited against the minimum wage without a voluntary written agreement between the employer and the employee."

64. Defendant had no voluntary written agreement with Plaintiff or other au pairs to credit meals and housing against Defendant's minimum wage obligations.

65. Defendant's policy and practice of taking a credit against minimum wage obligations for housing and meals violates Section 221, 224, and IWC Wage Order No. 15.

66. Labor Code § 225.5 provides that, "In addition to, and entirely independent and apart from, any other penalty provided in this article, every person who unlawfully withholds wages due any employee in violation of Section 212, 216, 221, 222, or 223 shall be subject to a civil penalty as follows: (a) For any initial violation, one hundred dollars ($100) for each failure to pay each employee. (b) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld. The penalty shall be recovered by the Labor Commissioner as part of a hearing held to recover unpaid wages and penalties or in an independent civil action. The action shall be brought in the name of the people of the State of California and the Labor Commissioner and attorneys thereof may proceed and act for and on behalf of the people in bringing the action. Twelve and one-half percent of the penalty recovered shall be paid into a fund within the Labor and Workforce Development Agency dedicated to educating employers about state labor laws,

1  and the remainder shall be paid into the State Treasury to the credit of the General Fund."

2  67. Similarly, Labor Code § 2699(f)(2) provides for a civil penalty of one hundred dollars ($100) for Plaintiff and each aggrieved employee per pay period for the initial violation of Labor Code §§ 221 and 224.

3  68. Accordingly, Plaintiff seeks to recover civil penalties as set forth above for Defendant's violations of Labor Code §§ 221 and 224.

### Failure to Provide Meal Breaks

69. Cal. Labor Code § 512 provides, in pertinent part, as follows: "An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes," and "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes."

70. Cal. Labor Code § 226.7 states in part, "An employer shall not require an employee to work during any meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission."

71. Defendant failed to provide Plaintiff and other au pairs with bona fide meal breaks when they were completely relieved from duty, because Plaintiff and other au pairs remained responsible for the care of the children while they ate their meals.

72. By failing to provide Plaintiff and other au pairs with these meal periods, Defendant violated California Labor Code §§ 512 and 226.7.

73. Under California Labor Code § 2699(f)(2), Plaintiff seeks to recover a civil penalty of one hundred dollars ($100) for Plaintiff and each aggrieved employee per pay period for the initial violation of Labor Code §§ 226.7 and 512 for failing to provide meal periods, and two hundred dollars ($200) for Plaintiff and each aggrieved employee per pay period for each subsequent violation of Labor Code §§ 226.7 and 512 for failing to provide meal periods.

### Wage Statement Violations

74. Pursuant to Labor Code § 226(a) and Wage Order No. 15, § 7, Defendant is required to provide—semimonthly or at the time of each payment of wages—itemized written

statements containing all information described in § 226 and IWC Wage Order No. 15, including, but not limited to, the total hours worked by the employee.

75. Defendant failed to comply with the Labor Code by knowingly and intentionally failing to provide Plaintiff and aggrieved employees with accurate written statements showing their actual and total hours worked.

76. Under California Labor Code § 226.3 which provides for civil penalties for violations of California Labor Code § 226(a), Plaintiff seeks a civil penalty of two hundred fifty dollars ($250) for Plaintiff and each aggrieved employee per violation for the initial violation, and one thousand dollars ($1,000) for Plaintiff and each aggrieved employee per violation for each subsequent violation of Labor Code § 226(a) for failure to provide timely, accurate, itemized wage statements.

**Recordkeeping Violations**

77. Pursuant to Wage Order No. 15, § 7, Defendant is required to keep accurate information with respect to each employee, including the following: the total hours worked by the employee, meal periods, and total wages paid each payroll period, including value of board, lodging, or other compensation actually furnished to the employee.

78. Labor Code § 1174.5 provides that "Any person employing labor who willfully fails to maintain the records required by subdivision (c) of Section 1174 or accurate and complete records required by subdivision (d) of Section 1174, or to allow any member of the commission or employees of the division to inspect records pursuant to subdivision (b) of Section 1174 , shall be subject to a civil penalty of five hundred dollars ($500)."

79. Defendant failed to comply with the Labor Code by knowingly and intentionally failing to provide Plaintiff and other au pairs with accurate written statements showing their actual and total hours worked, breaks taken, and value of room and board provided. In fact, Defendant neither maintains records of the hours worked by its workers, nor does it remit any semimonthly, itemized statement of hours worked and wages earned. Plaintiff seeks a civil penalty of $500 for this violation.

**Attorneys' Fees**

80. California Labor Code § 2699(g) further provides that any employee who prevails in an action for civil penalties is entitled to an award of reasonable attorneys' fees and costs. Plaintiff hereby seeks to recover her attorneys' fees and costs under this fee and cost shifting statute.

## Exhaustion

81. On January 8, 2021, pursuant to California Labor Code § 2699.3, Plaintiff sent notice by certified mail to the Labor and Workforce Development Agency (LWDA) and Defendant of the specific provisions of the Labor Code that have been violated, including the facts and theories to support the violations. The LWDA received this notice on the same day, January 8, 2021. *See* Letter from Nichols Kaster, LLP to the LWDA and Defendant attached hereto as Exhibit D. The sixty-five-day time limit for the agency to respond has expired, such that Plaintiff has exhausted her administrative remedies.

## SECOND CLAIM FOR RELIEF
## FAILURE TO PROVIDE ITEMIZED WAGE STATEMENTS
## (CAL. LABOR CODE § 226)
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

82. Plaintiff and Class Members allege and incorporate by reference the allegations in the preceding paragraphs.

83. Pursuant to Labor Code § 226, employers, including Defendant, must provide their employees an accurate, written, itemized wage statement with each paycheck. The wage statement must show all applicable pay rates in effect during the pay period, and the corresponding number of hours worked at each hourly rate by the employee.

84. Defendant knowingly and intentionally failed to provide Plaintiff and Class Members with the required accurate, written, itemized wage statements.

85. Pursuant to Labor Code § 226, Plaintiff and Class Members have suffered injury as a result of Defendant's failure to provide accurate, written, itemized wage statements.

86. Plaintiff and Class Members are entitled to all actual and statutory damages and penalties available for these violations under Labor Code § 226(e).

87. California Labor Code § 266(e) further provides that any employee who prevails

in an action for damages and penalties is entitled to an award of costs and reasonable attorneys' fees. Plaintiff and representative Merante hereby seeks to recover her attorneys' fees and costs.

## **PRAYER FOR RELIEF**

Based on the above allegations, Plaintiff respectfully requests entry of judgment on behalf of herself and other current and former employees against Defendant, as follows:

1. For civil penalties under Labor Code § 2699 in an amount according to proof;
2. For all actual and statutory damages and penalties as authorized under Labor Code § 226(e);
3. For prejudgment interest and post-judgment interest as allowed by law;
4. For attorneys' fees and costs, as authorized under Labor Code § 2699(g)(1) and 226(e);
5. Certification of this action as a class action;
6. Designation of Plaintiff as class representative;
7. Appointment of Nichols Kaster, PLLP, Rukin Hyland & Riggin LLP, and Towards Justice as class counsel;
8. For such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demands a trial by jury.

Dated: March 29, 2022

**NICHOLS KASTER, LLP**
**RUKIN HYLAND & RIGGIN LLP**
**TOWARDS JUSTICE**

By: */s/ Matthew C. Helland*
Matthew C. Helland