MATTHEW C. HELLAND (SBN 250451)
*helland@nka.com*
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

H. CLARA COLEMAN (admitted *pro hac vice*)
*ccoleman@nka.com*
NICHOLS KASTER, PLLP
80 S. 8th Street, Suite 4700
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

PETER RUKIN (SBN 178336)
*prukin@rukinhyland.com*
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

RACHEL DEMPSEY (SBN 310424)
*Rachel@TowardsJustice.org*
TOWARDS JUSTICE
2840 Fairfax Street, Suite 220
Denver, CO 80207
Telephone: (720) 441-2236

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISABELLA SAVINI MERANTE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN INSTITUTE FOR FOREIGN STUDY, INC, a Connecticut Company,<br><br>Defendant. | CASE NO.: 21-cv-03234-EMC<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND PRIVATE ATTORNEYS GENERAL ACT (PAGA) REPRESENTATIVE ACTION SETTLEMENT**<br><br>Date:        July 21, 2022<br>Time:        1:30 pm<br>Courtroom:  5, 17th Floor |

**NOTICE OF MOTION TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 1:30 pm on July 21, 2022 in the courtroom of the Honorable Edward M. Chen, Courtroom 5, 17th Floor of the United States District Court for the Northern District of California, Plaintiff will and hereby does move this Court for conditional certification of a Rule 23 settlement class and preliminary approval of a Settlement reached in this Private Attorneys General Act and Rule 23 action against Defendant American Institute for Foreign Study, Inc. This motion is based on this Notice of Motion and Motion for Preliminary Approval of Settlement, the Declarations of Matthew Helland, Peter Rukin, and Rachel Dempsey, and their attached exhibits, all of which Plaintiff files concurrently with this Motion, and all other pleadings and papers on file in this action, and such argument as the Court may hear.

DATED:  June 15, 2022                          NICHOLS KASTER, LLP


By:  s/Matthew C. Helland
Matthew Helland
Attorney for Plaintiff

# TABLE OF CONTENTS

MEMORANDUM OF LAW .................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................ 1

    I.   THE LITIGATION ............................................................................................ 1

        A.   Factual Background ............................................................................ 1

        B.   Procedural Background ...................................................................... 2

    II.  THE SETTLEMENT ........................................................................................ 4

        A.   Settlement Amount and Allocations .................................................. 4

        B.   Defendant's Notification Obligations ................................................ 5

        C.   Definition of PAGA Members and Rule 23 Class ............................. 5

           i.   PAGA Members ..................................................................... 5

          ii.  Rule 23 Class ........................................................................ 5

        D.   Notice of Rule 23 Settlement and Opportunity to Object .................. 6

        E.   Release of Claims ............................................................................. 7

           i.   Released Parties .................................................................... 7

          ii.  Class Release ....................................................................... 7

          iii. PAGA Release ..................................................................... 8

        F.   Settlement Administration ................................................................. 8

        G.   Settlement Allocations and Distribution of Funds ............................. 9

LEGAL ANALYSIS ........................................................................................................ 10

    III. THE COURT SHOULD GRANT PRELIMINARY APPROVAL .............................. 10

        A.   The Settlement Satisfies the Rule 23 Requirements For Purposes of Settlement. ...................................................................................... 11

           i.   Numerosity is Satisfied ....................................................... 12

          ii.  There are Questions of Law and Fact Common to the Class ............................. 12

          iii. The Named Plaintiff's Claim is Typical of the Class ......................... 13

          iv. Adequacy is Satisfied ........................................................ 13

　　　　　v.　A Class Action is Superior to Other Alternatives ................................................. 14

　　B.　　The Settlement is Fair, Adequate, and Reasonable ................................................ 14

　　　　　i.　The Strength of Plaintiffs' Case, Weighed Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Through Trial, Supports Approval. ................ 15

　　　　　ii.　The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval. ........................................................................................................ 17

　　　　　iii.　The Stage of the Proceedings Also Favors Preliminary Approval. .................... 20

　　　　　iv.　The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval. ........................................................................ 20

　　　　　v.　The Absence of a Government Participant Favors Approval. ............................ 21

　　　　　vi.　The Reaction of Class Members to The Proposed Settlement is Not Yet Suitable for Review. .......................................................................................................... 21

　　C.　　Plaintiff's Requested Attorneys' Fees and Costs are Fair and Reasonable ......... 21

　　D.　　The Court Should Award a Service Payment to the Class Representative .......... 23

CONCLUSION ................................................................................................................. 23

# TABLE OF AUTHORITIES

**CASES**

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ...................................... 22

*Bedolla v. Allen*, 736 F. App'x 614 (9th Cir. 2018)......................................................................... 19

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).............................................................................. 21

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018)........................................................ 17

*Chao v. Aurora Loan Services, LLC*, 2014 WL 4421308 (N.D. Cal. Sept 5, 2014).................... 23

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)............................................... 15

*Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255 (N.D. Cal. Oct. 11, 2017) ............. 19

*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) ......................................................................... 11

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ............................................................. 10

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW,

       2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)................................................................. 16

*Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980)..................... 12

*Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC,

       2021 WL 5331451 (N.D. Cal. Nov. 16, 2021) ................................................................ 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................. 13

*Haworth v. State of Nevada*, 56 F.3d 1048 (9th Cir. 1995) ............................................................ 21

*Hernandez v. Dutton Ranch Corporation*,

       2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ............................................................... 19

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 9357 (9th Cir. 2011)........................ 15, 21

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) .......................................... 11

*In re Linkedin User Privacy Litig.*, 309 F.R.D. 573 (N.D. Cal. 2015) .......................................... 23

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)................................................... 10

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)..................................................... 22

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005)...................................... 12

*In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993 (N.D. Cal. 2015) .................. 16

*In re: Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010)............... 21

*Jennings v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW,

    2018 WL 4773057 (N.D. Cal. Oct. 3, 2018)..........................................................19

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ...............................20

*McKnight v. Uber Techs., Inc*., No. 14-cv-05615-JST,

    2017 WL 3427985 (N.D. Cal. Aug. 7, 2017) ....................................................10

*Moriana v. Viking River Cruises, Inc.*, __ U.S. __ 2021

    WL 5911481 (Dec. 15, 2021, No. 20-1573) ...................................... 1, 4, 16

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ... 17

*Nwabueze v. AT & T Inc*., 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ....................22

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................ 14, 16, 17

*Parra v. Bashas', Inc*., 536 F.3d 975 (9th Cir. 2008) .....................................12

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) ............................................13

*Pitarro v. DSV Air & Sea, Inc.,* No. 19-CV-00849-SK,

    2021 WL 6499973 (N.D. Cal. Jan. 28, 2021) ....................................................15

*Ramirez v. Benito Valley Farms, LLC*, 2017 WL 3670794 (N.D. Cal. Aug. 25, 2017) ...............15

*Rincon v. W. Coast Tomato Growers, LLC*, No. 13-CV-2473-JLS (KSC),

    2018 WL 828104, (S.D. Cal. Feb. 12, 2018) ....................................................19

*Rodriguez v. W. Publ'g Corp*., 563 F.3d 948 (9th Cir. 2009).....................................21

*Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal. 2016) ....................23

*Singer v. Becton Dickinson & Co*., No. 08-821 IEG,

    2010 WL 2196104 (S.D. Cal. Jun. 1, 2010) ....................................................22

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) ................21

*Slezak v. City of Palo Alto*, Case No. 16-cv-3224-LHK,

    2017 WL 2688224 (N.D. Cal. June 22, 2017) ............................................20

*Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003). ......................................11

*Stuart v. Radioshack Corp*., C-07-4499 EMC, 2010 WL 3155645,(N.D. Cal. Aug. 9, 2010).....22

*Terry v. Hoovestol, Inc*., No. 16-cv-05183-JST, 2018 WL 4283420 (N.D. Cal. Sept. 7, 2018) ..11

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 463 (2016) ..................................12

*Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1235 (9th Cir. 1996) ...................................... 14

*Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC,

        2016 WL 5907869 (N.D. Cal. Oct. 11, 2016)................................................................ 19

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA,

        2012 WL 5878390, (N.D. Cal. Nov. 21, 2012) ............................................................ 11

*Wilson v. SkyWest Airlines, Inc.*, 2021 WL 2913656 (N.D. Cal. July 12, 2021)........................ 18

*Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 WL 2929988 (N.D. Cal. July 8, 2019)......... 20

**OTHER AUTHORITIES**

Cal. Lab. Code § 226(e) ........................................................................................................... 13

Cal. Lab. Code § 226(e)(2)(B) .................................................................................................. 12

Mutual Educational and Cultural Exchange Act of 1961, 22 U.S.C. § 2452(a)(1) ...................... 1

**RULES**

Fed. R. Civ. P. 23(e)(1)(C) ....................................................................................................... 14

**REGULATIONS**

22 C.F.R. § 62 ......................................................................................................................... 17

22 C.F.R. § 62.1(a)...................................................................................................................... 1

22 C.F.R. § 62.1(b) ..................................................................................................................... 2

**MEMORANDUM OF LAW**

Plaintiff Isabella Savini Merante ("Plaintiff") moves for preliminary approval of a settlement reached in this California Labor Code Private Attorneys General Act ("PAGA") and Rule 23 case against American Institute for Foreign Study, Inc. d/b/a Au Pair in America ("Defendant"). Defendant does not oppose the motion. The settlement is an excellent result for the Class and the Labor Workforce Development Agency ("LWDA"), particularly given a number of significant challenges Plaintiff faced in the litigation. Most obviously, Plaintiff faced the possibility that the Supreme Court's imminent decision in *Moriana v. Viking River Cruises, Inc.*, __ U.S. __ 2021 WL 5911481 (Dec. 15, 2021, No. 20-1573) would undermine the viability of PAGA actions.[1] In the face of these challenges, Plaintiff was able to obtain a $1,000,000 monetary settlement that will provide a meaningful payment to the LWDA and significant individual settlement payments to the approximately 1,349 au pairs who fall within the settlement class. This settlement is non-reversionary and is not on a claims-made basis. Further, Plaintiff has negotiated meaningful nonmonetary relief. Specifically, as part of the settlement, Defendant is obligated to notify all California host families of state and local minimum wage obligations. These notification obligations provide a critical benefit to current and future au pairs working in the State of California.

**RELEVANT BACKGROUND**

**I.      THE LITIGATION**

**A.      Factual Background**

Pursuant to the Mutual Educational and Cultural Exchange Act of 1961, 22 U.S.C. § 2452(a)(1), the U.S. State Department created the Exchange Visitor Program to promote educational and cultural exchanges between the people of the United States and of other nations. 22 C.F.R. § 62.1(a). The State Department does not carry out Exchange Visitor Programs itself, but rather "facilitates activities . . . by designating public and private entities to act as sponsors of

---

[1] The United States Supreme Court issued its decision in *Viking River* as Plaintiff was finalizing this motion for filing. The decision can be found here: https://www.supremecourt.gov/opinions/21pdf/20-1573_8p6h.pdf. Plaintiff will be prepared to discuss the decision at the hearing on this motion, but for purposes of this filing submits that the Court's decision supports approval of this settlement.

the Exchange Visitor Program." 22 C.F.R. § 62.1(b). One such exchange program, the au pair program, allows foreign nationals between the ages of 18 and 26 years old to live with families in the United States with childcare services from foreign nationals between the ages of 18 and 26 years old. According to the United States Department of State, approximately 2,800 J1 visa au pairs work in California each year. (FAC ¶ 3).

Defendant is one of the private agencies authorized by the State Department to sponsor au pairs. (First Amended Complaint ("FAC"), Dkt. No. 43, ¶ 3). Its principal place of business is in Connecticut. (*Id*. at ¶ 8).  Ms. Merante's complaint alleges that, during the period May 15, 2019, through May 12, 2021, Ms. Merante participated in the au pair program sponsored by Defendant. (*Id.* at ¶ 23) Throughout her participation in the program, Ms. Merante resided with host families located in California. *Id.* Ms. Merante alleges that, for approximately the first year of her employment, from May 2019 to June 2020, she worked as an au pair in San Francisco, California and received a weekly stipend of $200.00 per week. *Id.* She alleges she would receive $15.00 additional for each hour she worked over 45. *Id.* Ms. Merante alleges that she then worked as an au pair in Marin County, California and received $250.00 per week with no additional payments. *Id.*  Ms. Merante alleges she regularly worked in the home for 10 hours in a day, and regularly worked between 42-50 hours per week. *Id.*

Defendant contends that it was not responsible for compliance with the California Labor Code with respect to Plaintiff or other au pairs who have participated in its au pair program for two independent reasons.  First, Defendant contends it did not employ Plaintiff or other au pairs who have participated in its au pair program.  Second, Defendant contends that the Exchange Visitor Program Regulations preempt and preclude application of the California Labor Code to Defendants.  Defendant did not provide Ms. Merante, or any other au pairs in its program, with any wage statements. (FAC ¶ 26.)

## B.    Procedural Background

On January 8, 2021, Plaintiff filed a PAGA exhaustion letter with the Labor and Workforce Development Agency ("LWDA") alleging Defendant was her employer and committed numerous wage and hour violations. (Dkt. No. 1, Ex. A, D, PAGA Letter). On March

15, 2021, Plaintiff filed a complaint, *Merante v. American Institute for Foreign Study, Inc.*, Case No. CGC-21-590398, in the Superior Court of the State of California, County of San Francisco seeking penalties pursuant to the California Private Attorneys General Act of 2004, Labor Code § 2698, et seq. ("PAGA") for the alleged wage and hour violations. (Dkt. No. 1, Ex. A, Compl.) In the initial Complaint, Ms. Merante claimed that Defendant employed her and other similarly situated au pairs and asserted claims against Defendant for alleged wage and hour violations, including: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to pay wages in a timely manner; (4) unlawful wage deductions and credits; (5) failure to provide meal breaks; (6) wage statement violations; and (7) recordkeeping violations. (*Id.*.) On April 30, 2021, Defendant removed the case to this Court. (Dkt. No. 1).

Following the Initial Case Management Conference on August 24, 2021, this Court referred the Parties to a settlement conference with Chief Magistrate Judge Joseph C. Spero. (Dkt. No. 25.)  The Court limited the parties' discovery prior to the settlement conference to key documents. (Dkt. No. 26.) In compliance with the Court's order the parties conducted targeted discovery, including but not limited to: exchanging initial disclosures and responding to document requests and interrogatories. (Helland Decl. ¶ 3.)  Plaintiff served discovery requests on July 20, 2021. (*Id.*)  Plaintiff agreed to Defendant's request for a 21-day extension, and Defendant served its responses and documents on September 9, 2021. (*Id.*)  The documents included training materials, advertising materials, job descriptions, host family and au pair contracts, and a communication contact log for Merante. (*Id.*)  After meeting and conferring regarding alleged deficiencies in Defendant's discovery responses, Defendant further produced additional emails between either Defendant and Plaintiff's host families or between Defendant and Plaintiff. (*Id.*)  Defendant also produced an anonymized list of au pairs who were placed in California during the relevant time period. (*Id.*)  Defendant served requests for production of documents on September 20, 2021. (*Id.* ¶ 4.)  On October 20, 2021 Plaintiff responded and produced relevant documents, including but not limited to emails between her and Defendant, requests for information regarding her hours worked in connection with compliance audits, and print outs of weekly schedules she received from her host family. (*Id.*)

On November 10, 2021 the Parties participated in the settlement conference with Magistrate Judge Joseph C. Spero. (Helland Decl. ¶ 5.)  While the Parties failed to reach a settlement at the initial conference, the Parties agreed to exchange additional information and set a further settlement conference on February 9, 2022. (Dkt. No. 34.)

Between the first settlement conference and the second settlement conference, on December 15, 2021, the United States Supreme Court granted review in *Viking River Cruises, Inc. v. Moriana*, which presents the question of whether the Federal Arbitration Act requires arbitration of representative claims, including those under California's Private Attorneys General Act ("PAGA"). *See Moriana v. Viking River Cruises, Inc*., __ U.S. __ 2021 WL 5911481 (Dec. 15, 2021, No. 20-1573). On January 10, 2022 Defendant's Counsel contacted Plaintiff's Counsel regarding their intent to seek a stay pending the *Viking River* decision. (Helland Decl. ¶ 6.)   This Court held a status conference via Zoom on January 18, 2022 at which the Court encouraged the parties to confer regarding a partial stay pending the *Viking River* decision. (Dkt. No. 37.) In the midst of discussions regarding a partial stay, the parties went forward with the second settlement conference on February 9, 2022. (Helland Decl. ¶ 6.) The Parties were able to successfully reach an agreement to resolve the PAGA claims. (Helland Decl. ¶  6.)  The Parties also agreed to resolve a claim for statutory penalties for failure to provide accurate wage statements under section 226 of the California Labor Code for a putative class of au pairs who worked in California, which Plaintiff added in its stipulated-to First Amended Complaint filed on March 29, 2022. (*Id*.; FAC, Dkt. No. 43.)

## II.    THE SETTLEMENT

The complete details of the Parties' agreement are contained in the Settlement Agreement ("the Settlement" or "Agreement") executed by the Parties and attached as Exhibit 1 to the Helland Declaration. The following summarizes the Agreement's key terms.

### A.    Settlement Amount and Allocations

Under the proposed settlement, Defendant will pay $1,000,000 for the claims of 1,349 Class Members, with the following allocation:

- Class Counsel Fees Payment, in the amount of $250,000, or one-quarter of the common

PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL

fund;

- Class Counsel Litigation Expenses Payment of $3,000 for all costs and litigation expenses incurred;

- Class Representative Service Payment of $5,000 for Plaintiff Isabella Merante;

- PAGA Allocations of $100,000 total, with $75,000 to be distributed to California's Labor Workforce Development Agency ("LWDA") and the remaining $25,000 to be paid proportionately to all PAGA members based on their number of workweeks in relation to the aggregate number of workweeks when members resided with host families during the relevant period; and

- Administration Expenses not to exceed $24,623 (Ex. 3, Final Quote for Administration).[2]

The remaining amount – which Class Counsel calculates to be approximately $617,377 ("Net Settlement Amount") – will provide an average net payment of approximately $457.66 to each class member.

**B.    Defendant's Notification Obligations**

As part of the Agreement, Defendant agrees to notify the host families in California who participate in Defendant's program that they: "are responsible for complying with the California Labor Code, including the obligation to pay all hours worked by the au pair at the applicable state or local minimum wage."  (Agreement § 63(a)). Defendant is further obligated to provide notice pursuant to the Class Action Fairness Act of 2005 ("CAFA"). (*Id.* at § 63(b)).

**C.    Definition of PAGA Members and Rule 23 Class**

i.    <u>PAGA Members</u>

PAGA Members are those Class Members who resided with a family in the State of California that engaged Defendant for the purpose of receiving the placement of an au pair to provide services for the Host Family from January 8, 2020 through the date on which the Court grants preliminary approval of this Agreement. (Agreement §§ 20, 29, 30).

ii.    <u>Rule 23 Class</u>

---

[2] The notice program and projected class member count has changed slightly since the administrator completed its Not To Exceed bid, but Analytics has confirmed that the NTE bid is still valid. (Helland Decl. ¶ 8.)

The Parties stipulated to certification of the Rule 23 class for statutory penalties for failure to provide accurate wage statements under section 226 of the California Labor Code for purposes of settlement only. (Agreement § 45). The proposed class consists of all current and former au pairs participating in the Defendant's program who resided with Host Families in California from January 8, 2020 through the date on which the Court grants preliminary approval of this Agreement. (Agreement § 9, 12).  There are an estimated 1,349 Class Members. (*Id.* at § 9).

**D.    Notice of Rule 23 Settlement and Opportunity to Object**

If the Court approves the proposed settlement, Defendant must provide class information to the Administrator within twenty (20) days. (Agreement § 51(a)).  The Administrator will email the Class Email Notice, the proposed form of which is attached as Exhibit B to the Settlement Agreement, to all Class Members within ten (10) calendar days of receiving the class data list from Defendant. (*Id.* at § 51(b)).) The Class Email Notice shall include a link to the settlement administration website as well as information describing the settlement.  (*Id.*) The proposed form of notice to be posted on the settlement website is attached to the Settlement Agreement as Exhibit A. Twenty (20) days after distribution of the email notices, the Administrator shall identify which emails to Class Members have not been opened or were undeliverable. (*Id.* at § 51(c).) Within twenty (20) days of receiving the Administrator's identification of Class Members with unopened or undeliverable Email Notices, Defendant shall provide the Administrator with the Class Data Supplement, including mobile cell phone numbers. (*Id.*). The Administrator shall then send the Class Notice to Class Members by texting them on their mobile cell phone numbers. (*Id.*). In any instance where a Class Member's Email Notice is unopened or undeliverable, and the Administrator does not have a mobile cell phone number for the Class member, the Administrator shall make further, diligent efforts to identify current email addresses or cell phone numbers to re-send the Notices.  (*Id.* at § 51(d)).

The Parties are foregoing traditional mailed notice because it would be expensive and ineffective in this case. Class Members worked in the United States for a short period of time on a J-1 visa. While they were in the United States, they lived with the host families where they

worked. After completing their employment, class members who did not secure another visa to stay in the United States (i.e., a student visa), typically returned to their home country. Accordingly, only those Class Members who are still employed at the time notice issues could be reached via U.S. Mail, and even then the mail would be sent to their workplace—an untenable situation for Class Members. International mail is slow and expensive, making it an inefficient way to distribute notice. The Parties' proposal to distribute notice via email, with follow up notice via text message, is the best way to ensure notice reached Class Members.

Class Members may submit objections as to any term of the Settlement, dispute the number of Workweeks allocated to them, and request exclusion. Class Members who wish to object to the settlement must submit a written objection to the Court no later than sixty (60) days after the Administrator emails the Notice. (Agreement § 52(a)). Class Members who wish to exclude themselves from the Settlement must postmark, email, upload, or mail to the Administrator a written request for exclusion no later than sixty (60) days after the Administrator emailing of the Notice. (*Id*. at § 52(c)). If more than five percent (5%) of the Class Members return valid and timely requests for exclusion, Defendant will have the right, but not the obligation, to void the Settlement. (*Id.* at § 53).

**E.    Release of Claims**

i.    <u>Released Parties</u>

The Released Parties are the named Defendant, the American Institute For Foreign Study, Inc., and its past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers. The Released Parties further includes all host families who hosted a Class Member in the Defendant's au pair program during the Class Period.

ii.    <u>Class Release</u>

The Rule 23 Class release extends to the alleged violations of Labor Code Section 226 for failure to provide accurate wage statements and any related claims under Section 226 that could have been alleged based on the facts and legal theories asserted in the First Amended

Complaint. (Agreement § 36). The release covers the period from January 8, 2020 through the date on which the Court grants preliminary approval of this Agreement. (*Id*.).  Class Members who submit a valid and timely request for exclusion from the Settlement, pursuant to the terms outlined in the Agreement, will be excluded from the Rule 23 Class and will not release their claims. (*Id.* at § 25). This release is appropriately tied to the claims pled in the First Amended Complaint.

iii.   PAGA Release

The PAGA release extends to the PAGA claims that were alleged in the complaint, and any related PAGA claims that could have been asserted based on the same or similar factual allegations. (Agreement § 35). The PAGA release expressly excludes all other claims. (*Id*. at §). The release covers the period from January 8, 2020 through the date on which the Court grants preliminary approval of this Agreement. Any Class Member who opts out of the Class Settlement will still be bound by the PAGA Release if they are PAGA Members. (*Id.* at § 35).

**F.    Settlement Administration**

The Parties have agreed to use Analytics, LLC as the Settlement Administrator ("the Administrator"). Class Counsel interviewed Analytics, LLC and one other settlement administrator about their experience with difficult international settlements like this one. (Helland Decl. ¶ 8.) It became clear that Analytics, LLC had the tools, resources, and experience to implement this settlement. (*Id*.; *see also* Ex. 3, Analytics Consulting LLC Expert CV and Firm Resume).[3] The Administrator's duties will include setting up and monitoring a settlement website that will house the Class Notice and allow for Class Members to respond to the notice; e-mailing the Notice Packet to all Class Members where e-mails are available; sending the notice via text message to those Class Members whose email notice was either not opened or was undeliverable; setting up a toll-free telephone number, an e-mail address, and a post office box to receive individual communications from Class Members which include, for instance, questions,

---

[3] Pursuant to Northern District of California guidelines, Class Counsel discloses that the firms, collectively, have used Analytics, LLC approximately 16 times in the past two years. (Helland Decl. ¶ 7.) In Nichols Kaster's experience, Analytics provides excellent service at a very competitive rate, and for that reason uses Analytics frequently. (*Id*.)

disputed claims, updated contact information, requests regarding payment; requests for exclusion, and objections; providing the Parties with weekly status reports; calculating Individual Class Settlement Payments and Individual PAGA Payments; providing payment to effectuate the payments due under the Settlement; issuing the tax reports required under this Settlement; handling returned funds, providing declarations as requested by the Parties, and otherwise administering the Settlement. (Agreement § 49). The Administrator will further set up a Qualified Settlement Fund ("QSF") account to handle the distribution of settlement payments. (*Id.* § 38).

### G.    Settlement Allocations and Distribution of Funds

All PAGA Members will receive a pro rata allocation of the $25,000 Civil Penalty Payment based on the number of workweeks they resided with host families in California during the PAGA Period, in relation to the aggregate number of workweeks when members resided with host families in California during the relevant period. (Agreement § 47(c)). Individual Class Settlement Payments will be paid from the Net Settlement Amount of $617,377 and paid pursuant to the formula as follows: (i) first, using the Class Data List, the Administrator will compute the total number of Workweeks of all Participating Class Members collectively during the Class Period; this sum shall be known as the "Workweek Total;" (ii) second, the Administrator will divide the Net Settlement Amount by the Workweek Total to determine the settlement value of each eligible Workweek; this shall be known as the "Workweek Value;" (iii) third, the Administrator will multiply the number of Workweeks of a Participating Class Member during the Class period by the Workweek Value to determine the Participating Class Member's Individual Class Settlement Payment. (*Id.* at § 48(a)).

Defendant shall fund the QSF with the Gross Settlement Amount no later than thirty-five (35) calendar days after the Effective Date of the settlement, as defined by the Agreement. (Agreement § 58). Within fourteen (14) days after Defendant funds the QSF, the Administrator will issue payments to PAGA Members and Participating Class Members via PayPal to the email address used to distribute Notice. (*Id.*) During the notice period, Class Members may request PayPal payment directed to a different email address, or may provide instructions for ACH

1    payment. (*Id.* § 52(d)(g).)

2        Class Counsel proposes payment via PayPal, after consultation with multiple settlement

3    administrators, to address the difficulty in delivering settlement payments to international class

4    members. (Helland Decl. ¶ 9.)  Many international banks do not honor personal checks drawn on

5    United States banks. Some settlements have distributed funds via Western Union or similar

6    service, but that option works best when class members are concentrated in one region or

7    country. PayPal provides cost-effective international distribution of funds via email—a medium

8    Class Members used to communicate with Defendant.

9        Settlement funds that are not accessed via PayPal will not revert to Defendant. Instead,

10   there will be a second distribution of funds if the unaccessed funds are sufficient to allow

11   payments of at least $10 per class member. Any remaining funds after a second distribution (or

12   of the unaccessed funds are insufficient for a second distribution) will be distributed to Legal Aid

13   at Work as *Cy Pres* recipient. (Agreement § 59.) Legal Aid at Work is a legal aid organization

14   providing legal services to California workers. (*See* https://legalaidatwork.org/.) Although the

15   parties and counsel do not have any current relationship with Legal Aid at Work, Class Counsel

16   have in the past donated to Legal Aid at Work and volunteered at the organization's workers'

17   rights clinic.

18                          **LEGAL ANALYSIS**

19   **III.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL**

20       "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class

21   actions." *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D.

22   Cal. Aug. 7, 2017) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

23   1992)); *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[O]verriding

24   public interest in settling and quieting litigation" is "particularly true in class action suits.")

25   (quotations omitted). The "decision to approve or reject a settlement is committed to the sound

26   discretion of the trial judge because he is exposed to the litigants, and their strategies, positions,

27   and proof." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended*

28   (June 19, 2000) (citation omitted). At the preliminary approval stage, the court's role is to assess

whether the settlement "falls within the range of possible approval." *Terry v. Hoovestol, Inc*., No. 16-cv-05183-JST, 2018 WL 4283420, at *1 (N.D. Cal. Sept. 7, 2018).

Here, the Court should preliminarily approve the settlement because it satisfies the Rule 23 requirements and is fair, adequate, and reasonable.

## A. The Settlement Satisfies the Rule 23 Requirements For Purposes of Settlement.

Plaintiff submits that preliminary approval of the proposed settlement is appropriate because the settlement meets the requirements of a class action pursuant to Rule 23 and Ninth Circuit case law. A trial court has wide discretion in certifying a class for settlement purposes and will be reversed only upon a strong showing that its decision was a clear abuse of discretion. *See Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000). Rule 23(a) provides that a class action is proper only if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1). In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Federal Rule of Civil Procedure 23(b). Where, as here, the parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co*., 327 F.3d 938, 952 (9th Cir. 2003). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA, 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012). The criteria for class certification are applied differently for a settlement class than a litigation class. "[T]he aspects of Rule 23(a) and (b) that are important to certifying a settlement class are those designed to protect absentees by blocking unwarranted or overbroad class definitions. The focus is on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019).

Here, Plaintiff seeks to certify the following settlement class:
All current and former au pairs participating in the Defendant's program who resided with Host Families in California from January 8, 2020 through the date on

which the Court grants preliminary approval of this Agreement.

This class matches the class pled in Plaintiff's First Amended Complaint. *See* FAC ¶ 29. Conditional certification of the settlement class is appropriate here as all the Rule 23 requirements are met.

    i.   <u>Numerosity is Satisfied</u>

      First, the numerosity requirement is met. The numerosity requirement is met where the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). In order to satisfy this requirement, plaintiffs need not state the "exact" number of potential class members, nor is there a specific number that is required. *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350–51 (N.D. Cal. 2005). Here, there are 1,349 Class Members and it would be impracticable and inequitable to require them to pursue their claims individually. This is particularly true because Class Members are by definition foreign nationals and the majority have returned to their home countries. (Helland Decl. ¶ 10.) Thus, the class satisfies the numerosity requirement.

    ii.   <u>There are Questions of Law and Fact Common to the Class</u>

      Second, there are questions of law and fact common to the class. A question is common where "the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 463 (2016). The existence of "shared legal issues with divergent factual predicates is sufficient" to meet the commonality requirement. *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (citation and internal quotations omitted). There is common law and fact governing Defendant's alleged failure to issue accurate wage statements. California Labor Code section 226 requires that accurate wage statements must accompany employees' paychecks. An employee is deemed to suffer injury if the employer fails to provide accurate and complete information as required by § 226(a) and "the employee cannot promptly and easily determine" the required information from the wage statement alone. Cal. Lab. Code § 226(e)(2)(B). Where an employer fails to provide wage statements, the employee is entitled to recover actual damages or $50 for the first pay period in which a violation occurs and $100 for each subsequent pay period, subject

12

to an aggregate penalty of up to $4000, plus costs and reasonable attorney's fees. Cal. Lab. Code § 226(e). Here, Defendant uniformly did not provide wage statements to au pairs and uniformly states that it was not required to do so because it was not the au pairs' employer and because the Exchange Visitor Program Regulations preempt and preclude application of the California Labor Code to Defendants. Thus, the evidence and arguments upon which the class allegations rest EW common to the class.

### iii.    The Named Plaintiff's Claim is Typical of the Class

Third, Plaintiff is typical of the class. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation and internal quotations omitted); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). As an au pair for Defendant in California during the relevant period Plaintiff Merante did not receive any wage statements from Defendant. Thus, the fact pattern relating to her wage statement claims is similar, if not identical, to that for other Class Members. Further, she has no conflicts of interest with the Class, sharing their likely desire to be compensated for Defendant's failure.

### iv.    Adequacy is Satisfied

Fourth, the Class Members have been adequately represented in this case. To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiff must show: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." Plaintiff Merante has been dedicated to the case throughout, having provided valuable information, produced relevant documents, and participated in both settlement conferences. (Helland Decl. ¶ 21.) Further, Class Counsel are adequate. Nichols Kaster, PLLP ("NKA") is a qualified firm with extensive experience in class action litigation. (Ex. 2, Nichols Kaster Firm Resume.) The majority of NKA's current practice is concentrated on representing employees in class action suits, and the firm is currently lead or co-counsel in many class or collective actions in state and federal courts

across the country. (Helland Decl. ¶ 11). Likewise, Rukin Hyland & Riggin LLP has significant experience representing employees in class-action suits and has been appointed class counsel in numerous wage and hour actions in California. (Rukin Decl. ¶ 3).  Towards Justice, a non-profit public interest law firm, is also highly qualified. The firm was founded to address wage theft issues and has extensive experience litigating class cases on behalf of employees, including au pairs. (Dempsey Decl. ¶¶ 5-6.) Class Counsel have also been actively prosecuting this action, investigating and litigating claims through written discovery and diligently working to reach a successful resolution. For these reasons, Class Counsel are adequate to represent the Class.

### v.     A Class Action is Superior to Other Alternatives

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification is proper under one of the three requirements of Rule 23(b). Plaintiff asserts that the action is maintainable under Rule 23(b)(3) because questions of law or fact common to class members predominate over any question affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b). The questions of law and fact regarding Defendant's alleged failure to provide accurate wage statements under California Labor Code are common to the Class and predominate over any individual issues. Moreover, settlement on a class-wide basis will promote greater efficiency. *See Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1235 (9th Cir. 1996) ("Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation."). Thus, the legality of Defendant's failure to provide wage statements can be settled on a class-wide basis only once rather than many separate times by each Class Member.

The criteria for class certification are met and this Court should preliminarily certify the proposed class for settlement purposes.

### B.     The Settlement is Fair, Adequate, and Reasonable.

In deciding whether to approve a proposed class action settlement, the Court must determine whether a proposed settlement is "fair, adequate and reasonable." O*fficers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also* Fed. R. Civ. P. 23(e)(1)(C).

Although there is no "specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action," district courts in the Ninth Circuit have evaluated PAGA settlements using the Rule 23 standard for evaluating settlements. *See Ramirez v. Benito Valley Farms, LLC*, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017) (citation omitted); *see also Jordan v. NCI Grp., Inc*., 2018 WL 1409590, at *2 (C.D. Cal. Jan. 5, 2018) ("[T]he Court will approve the PAGA settlement upon a showing that the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes."). The factors trial courts must balance in evaluating a proposed settlement include:

> (1) the strength of the plaintiffs' case;
>
> (2) the risk, expense, complexity, and likely duration of further litigation;
>
> (3) the risk of maintaining class action status throughout the trial;
>
> (4) the amount offered in settlement;
>
> (5) the extent of discovery completed and the stage of the proceedings;
>
> (6) the experience and views of counsel;
>
> (7) the presence of a governmental participant; and
>
> (8) the reaction of the class members to the proposed settlement.

*Pitarro v. DSV Air & Sea, Inc.,* No. 19-CV-00849-SK, 2021 WL 6499973, at *1 (N.D. Cal. Jan. 28, 2021) (citing *Churchill Vill., L.L.C. v. Gen. Elec*., 361 F.3d 566, 575 (9th Cir. 2004)). In addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties*." In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946-47 (9th Cir. 2011). As detailed below, these factors weigh heavily in favor of granting preliminary approval.

    i.   <u>The Strength of Plaintiffs' Case, Weighed Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Through Trial, Supports Approval.</u>

The first three factors are addressed together and require the court to assess the plaintiff's "likelihood of success on the merits and the range of possible recovery" versus the risks of continued litigation and maintaining class action status through the duration of the trial. *See Garner v. State Farm Mut. Auto. Ins. Co*., No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D.

Cal. Apr. 22, 2010). While the court must assess the likelihood of success on the merits, "the court need not reach any ultimate conclusions on the contested issues" because it is often "the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 625. The first three factors weigh in favor of approving settlement when the defendant has "plausible defenses that could have ultimately left class members with a reduced or non-existent recovery." *In re TracFone Unlimited Serv. Plan Litig*., 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015). These factors support approval here.

While Plaintiff believes strongly in the merits of this case, she faces substantial risks in continuing to litigate the PAGA and class-based wage statement claims. First, at the time the settlement was reached, there was a substantial risk that the Supreme Court's awaited decision in *Viking River* would adversely impact or effectively end this litigation. As this Court is aware, the question presented in *Viking River* is "Whether the Federal Arbitration Act requires enforcement of a bilateral arbitration agreement providing that an employee cannot raise representative claims, including under the California Private Attorneys General Act." *See Moriana v. Viking River Cruises, Inc*., __ U.S. __ 2021 WL 5911481 (Dec. 15, 2021, No. 20-1573). At the time the settlement was reached, counsel understood that, were the Supreme Court to answer the question in the affirmative, Plaintiff might be foreclosed from pursuing the PAGA claims in court or any other venue. That is because Defendant contends that Ms. Merante executed an agreement requiring individual arbitration of all claims against Defendant. Thus, if the Supreme Court were to issue a decision in favor of Viking River, this entire case might be compelled to individualized arbitration, or worse yet, dismissed with no recourse. (Agreement, ¶8(b)).

Further, on June 15, 2022, as Plaintiffs were finalizing this motion, the Supreme Court issued its anticipated decision in *Viking River*. The decision can be found here: https://www.supremecourt.gov/opinions/21pdf/20-1573_8p6h.pdf. Plaintiff will be prepared to discuss the decision in detail at the hearing on this motion, but for purposes of this filing submits that the Court's decision supports approval of this settlement.

Second, all of Plaintiff's claims hinge upon whether Defendant employs au pairs.

Defendant hotly disputes its status as an employer – a defense which if successful would have ultimately left aggrieved employees and class members with no recovery. Although Plaintiff believes there is merit to the employer status argument, Plaintiff recognizes that no court has yet held that au pair program sponsors qualify as employers.

Third, in addition to strongly contesting employer status, Defendant's position is that Plaintiff's claims must fail because they are preempted by the U.S. Department of State Exchange Visitor Program Regulations, 22 C.F.R. § 62 *et seq*. Specifically, Defendant asserts that the regulations governing the sponsor program impliedly preempt the application of state and local wage laws under both field and conflict preemption.  While Plaintiff disagrees with such legal reasoning, if successful the argument would bar this litigation.

Finally, Plaintiff recognizes that even if successful at trial, any PAGA penalty award could be substantially reduced by the Court. Specifically, Section 2699(e)(2) of the California Labor Code gives the court discretion to reduce PAGA civil penalties if it finds that awarding the full amount of penalties would be "unjust, arbitrary and oppressive, or confiscatory." *See Carrington v. Starbucks Corp*., 30 Cal. App. 5th 504 (2018) (rejecting plaintiff's request for nearly $70 million in PAGA penalties and affirming the superior court's imposition of .2% of the total penalties"). Here, in continuing to litigate Plaintiff risked the Court substantially reducing any PAGA award as unjust or oppressive because the alleged wage and hour violations flow from the same factual allegations.

ii.   <u>The Amount Offered in Settlement Weighs Strongly in Favor of Preliminary Approval.</u>

In the face of the above challenges, Plaintiff negotiated an excellent result for the LWDA and the class. In evaluating the amount of recovery the court must examine the settlement as a whole for overall fairness. *See Officers for Justice*, 688 F.2d at 628. In addition, "it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Here, the PAGA penalties have been allocated an amount of $100,000. Plaintiff calculated maximum possible PAGA penalties at approximately $37,000,000. (Helland Decl. ¶

12.) However, as the Court is well aware, the theoretical maximum PAGA penalties often greatly exceeds the likely recovery at trial. Here, for example, the calculation assumes penalties for six different violations, totaling $700, for every pay period. (*Id*.) This penalty amount is approximately three times greater than au pairs' typically weekly earnings, and California law on whether PAGA penalties may be stacked remains unsettled, with no binding appellate decisions on the issue. *See, e.g.*, *Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL 5331451, at \*9 (N.D. Cal. Nov. 16, 2021) (noting that the assumption of stacked PAGA penalties "is subject to challenge" based on mixed precedent in federal district courts). If PAGA penalties are limited to one per pay period, the possible recovery is closer to $5,000,000. (Helland Decl. ¶ 12.) And even this recovery could be reduced by the Court at trial.

The $1,000,000 settlement is a particularly reasonable result given the substantial risk created by the impending *Viking River* decision that Plaintiff's PAGA claims will be forced into individual arbitration or be dismissed altogether. The result is also reasonable given the lack of any previous case authority finding au pair sponsor agencies to be employers, a factor that the Defendant would argue supports dramatically reducing any penalty assessed in this case. Meanwhile, the Class Members will receive significant value on their Labor Code Section 226 claims. Maximum wage statement penalties are in the range of $2,700,000 to over $4,000,000. (Helland Decl. ¶ 13). Plaintiff and the Class face uncertainty on this claim based on Defendant's arguments that it is not an employer and that federal regulations preempt state law. And on top of that, Defendant would likely argue that any violation of Section 226 was not "knowing and intentional" and that it had a good faith belief that it was not an employer. *See*, *e.g.*, *Wilson v. SkyWest Airlines, Inc.*, 2021 WL 2913656, at \*3 (N.D. Cal. July 12, 2021) (recognizing a good faith defense to wage statement liability).

The result here compares favorably with other class action and PAGA settlements approved by this and other Ninth Circuit courts and supports settlement approval.  For example, last year, in a hybrid PAGA/FLSA case involving unpaid wages to farm workers, this Court approved a PAGA settlement of just under $200,000 (after fees and expenses) in the face of almost $20 million in potential PAGA exposure. *Hernandez v. Dutton Ranch Corporation*, 2021

WL 5053476 (N.D. Cal. Sept. 10, 2021) (granting final approval; "The Settlement affords an acceptable gross PAGA penalty of $431,130.52 (2/3 of the total $525,000 plus the remaining $81,130.52 of unclaimed FLSA Settlement funds) which is approximately 2%-4% of the PAGA exposure, which Plaintiffs estimated to be between $11.6 and $19.9 million dollars.").[4] *See also Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255, at *1-2 (N.D. Cal. Oct. 11, 2017) (granting preliminary approval for $952,000 gross settlement of off-the-clock, and meal and rest break claims, for 1,168 individuals for a gross average recovery of approximately $800 per person); *Jennings v. Open Door Mktg., LLC*, No. 15-cv-04080-KAW, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018) (approving a PAGA settlement of 0.6% of its total value because of the "risks of no recovery"); *McLeod v. Bank of Am., N.A.*, No. 16-CV-03294-EMC, 2018 WL 5982863, at *4 (N.D. Cal. Nov. 14, 2018) (finding settlement for $50,000 in PAGA penalties adequate where the total possible recovery for penalties was estimated at $4.7 million); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (N.D. Cal. Oct. 11, 2016) (finding a PAGA settlement of 0.15% the verdict value reasonable "in the context of the settlement as a whole"). This is particularly true now given the impact of *Viking River* on PAGA.

Moreover, in addition to monetary relief, the Agreement requires Defendant to notify all California host families that they: "are responsible for complying with the California Labor Code, including the obligation to pay all hours worked by the au pair at the applicable state or local minimum wage." (Agreement § 63(a)). This non-monetary relief weighs in favor of approval as it significantly benefits the PAGA Group and future workers by promoting PAGA's goal of encouraging compliance with the California Labor Code. *See Rincon v. W. Coast Tomato Growers, LLC*, No. 13-CV-2473-JLS (KSC), 2018 WL 828104, at *4 (S.D. Cal. Feb. 12, 2018) (finding the settlement term requiring institution of workplace practices to ensure compliance with wage and hour laws favored a finding the settlement was fair and reasonable); *Bedolla v. Allen*, 736 F. App'x 614, 617 (9th Cir. 2018) (affirming district court's finding that the settlement agreement as a whole provided value to the class in part because it provided

---

[4] Pursuant to Northern District of California guidelines, Class Counsel provides a comparison of this case with the Dutton Ranch case as Exhibit A to the Rukin Declaration.

nonmonetary relief such as training and auditing staff on compliance with labor laws).

iii.  The Stage of the Proceedings Also Favors Preliminary Approval.

The extent of discovery is relevant in determining the parties' knowledge of the case. However, "[i]n the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.' " *Wilson v. Tesla, Inc*., No. 17-cv-03763-JSC, 2019 WL 2929988, at *8 (N.D. Cal. July 8, 2019) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

Prior to mediation the Parties conducted sufficient discovery to investigate the claims, evaluate Defendant's liability, and determine class-wide damages. The discovery included exchanging initial disclosures and responding to document requests and interrogatories. As described above, Defendant produced substantial documents, including production of a list of au pairs who were placed in California during the relevant time period. (Helland Decl. ¶ 3.) Plaintiff likewise produced relevant documents in her possession. (*Id*. ¶ 4.) Following the first settlement conference Defendant further information that was potentially relevant based on the first settlement conference. (*Id*. ¶ 5.) Such discovery provided both sides with the requisite information to evaluate the merits of the case and related exposure. Thus, this factor also weighs in favor of approval.

iv.  The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval.

"In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Slezak v. City of Palo Alto*, Case No. 16-cv-3224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017). Class and Defendant's Counsel are experienced attorneys who are familiar with PAGA, wage and hour class actions, and the legal and factual issues of this case. (Helland Decl. ¶ 11.) In negotiating the settlement, Class Counsel had the benefit of their combined years of wage and hour experience in addition to their familiarity with the case. (Helland Decl. ¶ 11; Rukin Decl. ¶¶ 2-7; Dempsey Decl. ¶ 11). Class Counsel fully supports the resulting settlement as fair, reasonable, and adequate given the risks of litigation.

(Helland Decl. ¶ 22; Rukin Decl. ¶ 6; Dempsey Decl. ¶ 23.) This factor weighs in favor of approval.

v.    The Absence of a Government Participant Favors Approval.

At the outset of the case Plaintiff exhausted with the LWDA with no response. Plaintiff filed the settlement agreement with the LWDA in conjunction with filing this motion. (Helland Decl. ¶ 23.) At the moment, there is no governmental entity involved other than the LWDA which so far has chosen not to intervene. This factor also favors approval.

vi.    The Reaction of Class Members to The Proposed Settlement is Not Yet Suitable for Review.

The reaction of the class members will be best assessed at the final approval hearing when the court can evaluate how many class members submitted objections. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Thus, this factor neither favors nor disfavors preliminary approval, as the Court will be able to better consider the reaction of class members upon motion for final approval.

**C.    Plaintiff's Requested Attorneys' Fees and Costs are Fair and Reasonable**

Class Counsel seeks attorneys' fees of $250,000, representing twenty-five percent of the $1,000,000 Settlement. (Agreement § 46(b)). Plaintiff will file a motion for approval of her attorneys fees, costs, and named Plaintiff enhancement during the notice period, in accordance with Ninth Circuit procedure. *See In re: Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). Nevertheless, Plaintiff addresses these issues preliminarily here.

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund … is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The case law construing what is a reasonable fee applies uniformly to all federal fee-shifting statutes." *Haworth v. State of Nevada*, 56 F.3d 1048, 1051 (9th Cir. 1995). The Ninth Circuit's benchmark for presumptively reasonable fees in the common fund context is twenty-five (25) percent of the gross settlement amount. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

In assessing whether the percentage requested is fair and reasonable, courts generally consider "the result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck." *Nwabueze v. AT & T Inc*., 2013 WL 6199596, at *10 (N.D. Cal. Nov. 27, 2013).

Plaintiff's requested fees of 25% of the gross settlement amount is presumptively reasonable and awards made in similar cases in the Ninth Circuit further support the reasonableness of the requested award. *See, e.g., In re Pac. Enterprises Sec. Litig*., 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming fee award of one-third of settlement); *Singer v. Becton Dickinson & Co*., No. 08-821 IEG, 2010 WL 2196104 at *8-9 (S.D. Cal. Jun. 1, 2010) (33.33% of wage and hour settlement "falls within he typical range ... in similar cases"; citing awards of 33.33%-40%); *Barbosa v. Cargill Meat Sols. Corp*., 297 F.R.D. 431, 449 (E.D. Cal. 2013) (awarding one-third percent in wage and hour class action); *Stuart v. Radioshack Corp*., C-07-4499 EMC, 2010 WL 3155645, at *6 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage-and-hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits").

Class Counsel has spent considerable time litigating this case, including but not limited to, investigating the case, drafting and amending the complaints, drafting and responding to discovery, meeting and conferring with opposing counsel regarding deficient discovery responses, performing damage calculations and preparing a demand, participating in two settlement conferences, drafting the settlement agreement, and drafting this motion. (Helland Decl. ¶ 14.) Class Counsel's combined lodestar is approximately $151,000. (*Id.* ¶ 19; Rukin Decl. ¶ 8; Dempsey Decl. ¶ 18). Accordingly, a 25% fee award would represent a lodestar multiplier of approximately 1.66.  An award above Class Counsel's lodestar is reasonable given the early stage of settlement and risks involved in continued litigation. Moreover, Class Counsel took this case on a contingency fee basis and assumed a significant risk that there would be no recovery.

To date, Class Counsel has incurred approximately $2,405.41 in costs (Helland Decl. ¶ 20; Rukin Decl. ¶ 14.) These costs include legal research and copying charges, document

retention database charges, process server charges, and filing fees. (*Id.*) These costs are reasonable, were necessary for successful prosecution of the case. Class Counsel will provide a final accounting of costs in conjunction with their fee petition.

**D.    The Court Should Award a Service Payment to the Class Representative**

Plaintiff requests the Court's approval of a Class Representative Service Payment ("Service Payment") in the amount of $5,000 to Isabella Merante to be paid to her in addition to her Individual Class Settlement payment. In determining whether an enhancement award is warranted, "the court should consider . . . the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1181 (S.D. Cal. 2016) (internal quotation omitted). "[I]n this district, a $5,000 incentive award is presumptively reasonable." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) (citing *Chao v. Aurora Loan Services, LLC*, 2014 WL 4421308, at *4 (N.D. Cal. Sept 5, 2014)). Here, Plaintiff Merante initiated this case, performed substantial work in support of the case, including attending two lengthy settlement conferences. (Helland Decl. ¶ 21.) She reviewed the initial Complaint and consulted with Class Counsel regarding the facts and theories in the Complaint. (*Id.*) She took a keen interest in the case and was a valuable sounding board for Class Counsel during the litigation. (*Id.*) She further discussed the settlement with Class Counsel on multiple occasions and reviewed and approved both the Memorandum of Understanding and the Settlement Agreement. (*Id.*) Ms. Merante's availability and attention to this case was especially instrumental considering that many Class Members moved out of the country during the course of litigation. Without Plaintiff Merante, the aggrieved employees and members of the class would likely have received no recovery. Thus, the Service Payment of $5,000, which represents than 0.5% of the Net Settlement Amount, is reasonable and should be approved.

## CONCLUSION

For these reasons Plaintiff asks that the Court grant preliminary approval to this settlement, certify the settlement class, appoint Plaintiffs' Counsel as Class Counsel and Plaintiff

23

Merante as the Named Plaintiff, make a preliminary finding that the settlement is fair, reasonable, and adequate, approve Analytics, LLC as the notice administrator and approve the Parties' proposed notice plan.

DATED: June 15, 2022                    NICHOLS KASTER, LLP

                                        By:  s/Matthew C. Helland
                                            Matthew Helland

                                        RUKIN HYLAND & RIGGIN LLP
                                        TOWARDS JUSTICE

                                        Attorney for Plaintiff