UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABELLA SAVINI MERANTE,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN INSTITUTE FOR FOREIGN STUDY, INC.,<br><br>    Defendant. | Case No. 21-cv-03234-EMC<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION AND PAGA SETTLEMENT**<br><br>Docket No. 45 |

## I.  INTRODUCTION

This matter comes before the Court on Plaintiff's motion for preliminary approval of a class action and Private Attorney General Act ("PAGA") settlement of the claims asserted against Defendant in this action. Having considered the arguments of counsel at the July 21, 2022 hearing and the evidence submitted in support of Plaintiffs' motion, the for the reasons stated on the record and those that follow, the Court hereby grants Plaintiffs' motion and orders as follows.

## II.  TERMS OF THE PROPOSED SETTLEMENT

The terms of the settlement are memorialized in the Settlement Agreement ("Agreement" or "Settlement") filed contemporaneously with Plaintiff's motion. A summary of the terms of the Settlement is as follow:

A.  <u>Monetary and Non-Monetary Relief</u>

As part of the Agreement, Defendant will pay $1,000,000, known as the "Gross Settlement Amount," inclusive of the following: (a) payments to participating Class Members; (b) Class Counsel's attorneys' fees of $250,000, if finally approved by the Court; (c) Class Counsel's

1  litigation costs and associated expenses of $3,000, if finally approved by the Court; (d) PAGA
2  Allocations of $100,000 total, with $75,000 to be distributed to California's Labor Workforce
3  Development Agency ("LWDA") and the remaining $25,000 to be paid proportionately to all
4  PAGA; (d) administration costs not to exceed $24,623, if finally approved by the Court; and (e)
5  the Class Representative Service Payment of $5,000 to Named Plaintiff Isabella Savini Merante, if
6  finally approved by the Court. The participating Rule 23 Class Members will receive an average
7  net payment of approximately $457.66.

8        As part of the Agreement, Defendant further agrees to notify the host families in California
9  who participate in Defendant's program that they: "are responsible for complying with the
10 California Labor Code, including the obligation to pay all hours worked by the au pair at the
11 applicable state or local minimum wage." *See* Agreement § 61(a).

12 **B.**    <u>Definition of PAGA Group and Rule 23 Class</u>

13       PAGA Members are defined as those Class Members who resided with a family in the
14 State of California that engaged Defendant for the purpose of receiving the placement of an au pair
15 to provide services for the Host Family from January 8, 2020 through the date of this order. *Id.* at
16 §§ 19, 28, 29.

17       The proposed Rule 23 class consists of all current and former au pairs participating in the
18 Defendant's program who resided with Host Families in California from January 8, 2020 through
19 the date of this order. *Id.* at §§ 8, 11.

20 **C.**    <u>Settlement Administrator</u>

21       The Parties have agreed to use Analytics Consulting LLC as the Settlement Administrator
22 ("the Administrator"). Plaintiff submits that the Parties chose Analytics Consulting LLC based on
23 its extensive experience in implementing class action communications and settlement programs,
24 including settlements involving international plaintiffs. The Administrator's duties will include
25 setting up and monitoring a settlement website that will house the Class Notice and allow for
26 Class Members to respond to the notice; e-mailing the Notice Packet to all Class Members;
27 following up with text message notice to Class Members who do not open their email notice;
28 setting up a toll-free telephone number, an e-mail address, and a post office box to receive

2

1  communications from Class Members which include, for instance, questions, disputed claims,
2  updated contact information, requests regarding payment; requests for exclusion, and objections;
3  providing the Parties with weekly status reports; calculating Individual Class Settlement Payments
4  and Individual PAGA Payments; setting up a Qualified Settlement Fund to handle the distribution
5  of payments, providing payment to effectuate the payments due under the Settlement; issuing the
6  tax reports required under this Settlement; handling returned funds, providing declarations as
7  requested by the Parties, and otherwise administering the Settlement.  Agreement §§ 38, 47.
8      Having reviewed Plaintiff's motion and Analytics Consulting LLC's Expert CV and Firm
9  Resume, this Court finds Analytics Consulting LLC to be qualified to act as Settlement
10 Administrator.

11 D. <u>Notice to Class Members</u>

12     Having reviewed the Parties' proposed notice and notice plan, the Court finds the Parties'
13 notice plan to be constitutionally sound because individual notices will be emailed to all Class
14 Members, with follow up notice via text message to recipients who do not open their email notice.
15 Given the transient nature of the international immigrant-worker Class Members the Court finds
16 such notice is the best notice practicable.  The Court further finds the parties' proposed Class
17 Notice, filed contemptuously with the Motion, is sufficient to inform Class Members of the terms
18 of the Settlement, their rights under the settlement, their rights to object to the Settlement, their
19 right to receive a payment under the settlement or elect not to participate in the settlement, and the
20 processes for doing so, and the date and location of the final approval hearing.  As stated at the
21 July 21, 2022 hearing, the Court requires the parties to make one modification to the content of the
22 notices.  The parties are instructed to add the following language to the top of the notices, in bold
23 and capitalized text: "**YOU MAY BE ENTITLED TO A CASH AWARD**."  With this
24 modification, the proposed notice and notice plan are approved.

25 E. <u>Release of Claims</u>

26     Pursuant to the Agreement, the Released Parties include:  the named Defendant, the
27 American Institute For Foreign Study, Inc., and its past, present and/or future, direct and/or
28 indirect, officers, directors, members, managers, employees, agents, representatives, attorneys,

United States District Court
Northern District of California

insurers, partners, investors, shareholders, administrators, parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers. The Released Parties further includes all host families who hosted a Class Member in the Defendant's au pair program during the Class Period.

The Rule 23 Class release extends to the alleged violations of Labor Code Section 226 for failure to provide accurate wage statements and any related claims under Section 226 that could have been alleged based on the facts and legal theories asserted in the First Amended Complaint. (Agreement § 35). The release covers the period from January 8, 2020 through the date of this order. *Id*. The PAGA release extends to the PAGA claims that were alleged in the complaint, and any related PAGA claims that could have been asserted based on the facts alleged. *Id.* at § 34. The PAGA release expressly excludes all other claims. *Id*. The release covers the period from January 8, 2020 through the date of this order. Any Class Member who opts out of the Class Settlement will still be bound by the PAGA Release if they are PAGA Members. *Id.* at § 30.

F. <u>Distribution of Funds</u>

After this Court's entry of judgment becomes final, as defined by the Agreement. Defendant shall fund the Qualified Settlement Fund with the Gross Settlement Amount within thirty-five (35) calendar days. Agreement § 56. All PAGA Members will receive a pro rata allocation of the $25,000 Civil Penalty Payment based on the number of workweeks they resided with host families in California during the PAGA Period, in relation to the aggregate number of workweeks when members resided with host families in California during the relevant period. Agreement § 46(c). Individual Class Settlement Payments will be paid from the Net Settlement Amount and paid pursuant to the formula as follows: (i) first, using the Class Data List, the Administrator will compute the total number of Workweeks of all Participating Class Members collectively during the Class Period; this sum shall be known as the "Workweek Total;" (ii) second, the Administrator will divide the Net Settlement Amount by the Workweek Total to determine the settlement value of each eligible Workweek; this shall be known as the "Workweek Value;" (iii) third, the Administrator will multiply the number of Workweeks of a Participating Class Member during the Class period by the Workweek Value to determine the Participating

4

Class Member's Individual Class Settlement Payment. *Id*. at § 46(a). Within fourteen (14) days after Defendant funds the QSF, the Administrator will issue payments to PAGA Members and Participating Class Members via PayPal to the email address used to distribute Notice. *Id.* During the notice period, Class Members may request PayPal payment directed to a different email address, or may provide instructions for ACH payment.

### III.     DISCUSSION

A.     The Rule 23 Class is Preliminarily Certified for Settlement Purposes

Plaintiff seeks an order certifying the following persons as Class Members solely for the purpose of entering a settlement in this matter:

> All current and former au pairs participating in the Defendant's program who resided with Host Families in California from January 8, 2020 through the date on which the Court grants preliminary approval of this Agreement.

Having considered the proposed Settlement Class and Plaintiff's briefing on the matter, this Court herby preliminarily finds the requirements of Rule 23(a) are satisfied because this proposed Class is so numerous that joinder of all Class Members is impracticable, there are questions of law or fact common to the Class, the claims of Plaintiff are typical of the claims of the Class; and Plaintiff will fairly and adequately protect the interests of the Class.

Based on the information obtained from Defendant, the Class is composed of approximately 1,349 individuals. Helland Decl. ¶ 10. Additionally, Class Members are, by definition, foreign nationals, and Plaintiffs assert that the majority of the have returned to their home countries. Mot. at 19. Because it would be impracticable to join such a large number of class members, many of whom no longer reside int the United States, in a single action, the numerosity requirement is met.

Here there are common contentions of law and fact governing Defendant's alleged failure to issue accurate wage statements. California Labor Code section 226 requires that accurate wage statements must accompany employees' paychecks. An employee is deemed to suffer injury if the employer fails to provide accurate and complete information as required by § 226(a) and "the employee cannot promptly and easily determine" the required information from the wage

statement alone. Cal. Lab. Code § 226(e)(2)(B). Where an employer fails to provide wage statements, the employee is entitled to recover actual damages or $50 for the first pay period in which a violation occurs and $100 for each subsequent pay period. *Id.* § 226(e). Here, Defendant uniformly did not provide wage statements to au pairs and uniformly states that it was not required to do so because it was not the au pairs' employer and because the Exchange Visitor Program Regulations preempt and preclude application of the California Labor Code to Defendants. Thus, the evidence and arguments upon which the class allegations rest are common to the class.

The requirements of Rule 23(b) are satisfied because questions of law or fact common to Class Members predominate over any questions affecting only individual Class Members.

B.   Appointment of Class Counsel and Named Representative

Named Plaintiff Merante seeks appointment as Class Representative. Class Counsel submits that Plaintiff Merante has been dedicated to the case throughout, having provided valuable information, produced relevant documents, and participated in both settlement conferences. Moreover, as an au pair for Defendant in California during the relevant period Plaintiff Merante did not receive any wage statements from Defendant and thus the fact pattern relating to her to wage statement claims is similar, if not identical, to that for other Class Members. Further, she has no conflicts of interest with the Class, sharing their likely desire to be compensated for Defendant's failure. The Court finds her appointment as Class Representative appropriate.

Matthew Helland and H. Clara Coleman of Nichols Kaster, LLP, Peter Rukin of Rukin Hyland & Riggin LLP, and Rachel Dempsey of Towards Justice seek appointment as Class Counsel. Based on their submissions I find the attorneys qualified to be Class Counsel, all having extensive experience in representing employees in class action suits.

C.   Requirements of Rule 23(b)(3)

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Predominance is satisfied only "when common issues 'represent a significant aspect of the

1   case and they can be resolved for all members of the class in a single adjudication.'" *Edwards v.*
2   *First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015).  But when "one or more of the central
3   issues in the action are common to the class and can be said to predominate, the action may be
4   considered proper under Rule 23(b)(3) even though other important matters will have to be tried
5   separately." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).  Here, the central
6   inquiry is whether Defendant provided wage statements to Class Member au pairs.  This is a
7   common question which predominates over individual questions (such as the number of the weeks
8   worked by an au pair), and the Class Members' potential legal remedies are identical rather than
9   individualized.  The legality of Defendant's failure to provide wage statements can be settled on a
10  class-wide basis only once rather than many separate times by each Class Member.  Therefore, the
11  predominance requirement is satisfied.
12      With respect to the Court's "superiority" analysis, Rule 23(b)(3) suggests the Court
13  consider:  (A) the class members' interests in individually controlling the prosecution or defense
14  of separate actions; (B) the extent and nature of any litigation concerning the controversy already
15  begun by or against class members; (C) the desirability or undesirability of concentrating the
16  litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class
17  action.  Fed. R. Civ. P. 23(b)(3)(A)-(D).  The alternative method of resolution here would require
18  over 1,000 individual claims.  Additionally, a significant portion of the Class Members no longer
19  reside in the United States and are unlikely to be in a position to initiate litigation from an
20  international jurisdiction for the relatively small potential recovery at stake in the class claim.
21  Therefore, a class action is the superior method of resolution under Rule 23(b)(3).
22      In sum, the requirements for certifying the Settlement Class are met.
23  D.   The Settlement is Fair, Adequate, and Reasonable
24      In deciding whether to approve a proposed class action settlement, the Court must
25  determine whether a proposed settlement is "fair, adequate and reasonable."  *Officers for Justice v.*
26  *Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also* Fed. R. Civ. P. 23(e)(1)(C).
27  Moreover, federal district courts reviewing PAGA settlements have also drawn on factors utilized
28  by the Ninth Circuit in evaluating whether a class action settlement is "fundamentally fair,

United States District Court
Northern District of California

adequate, and reasonable." *See O'Connor v. Uber Techs*., 201 F. Supp. 3d. 1110, 1134 (N.D. Cal. 2016); *see also Hanlon v. Chrysler Corp*., 150 F.3d 1011 (9th Cir. 1998).

For the reasons stated on the record and those that follow, the Court finds the PAGA and Rule 23 settlement is fair, adequate and reasonable. First, the Court finds that the settlement reflects the informed views of experienced counsel and is the product of serious, arms-length negotiations conducted after investigation and discovery.

Here, the parties arrived at the Settlement Agreement after engaging in early-stage formal discovery, and participating in two settlement conferences before Chief Magistrate Judge Spero. The parties reached their agreement after their second session before Judge Spero. Further, there appear to be no red flags of collusion. Plaintiff's counsel requests 25% of the settlement fund for attorneys' fees, which is consistent with the Ninth Circuit's presumptive benchmark for reasonable attorneys' fees in common fund cases. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011). Although the settlement agreement provides that Plaintiff's counsel will make a fee request of up to 25% of the gross settlement amount, the agreement also provides that an "award by the Court of lesser amounts than those sought by Plaintiff. . . and class counsel for Class Counsel Fees Payment. . . will not constitute a material modification of the Agreement," and will not affect the effectiveness of the other terms of the agreement. *See* Agreement § 55(d); *O'Connor*, 2019 WL1437101, at *7.

Second, the Court finds that the settlement is fair given the strength of Plaintiff's case and the risk, expense, and complexity of further litigation. In addition to substantial monetary payment, the settlement also contains critical non-monetary relief. Under Rule 23(e)(2)(C)(i), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of Lead Plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor); and the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026). Settlement of PAGA claims requires considerations of several overlapping factors (1) protecting

8

workers and law-abiding employers by ensuring compliance with the State's labor standards and deterring future Labor Code violations; (2) collecting civil penalties to augment the State's labor enforcement capabilities and educating workers; and (3) ensuring settlement has a rational basis in view of the strength and full value of the PAGA claims. *O'Connor*, 201 F. Supp. 3d at 1132–35.

### **Class Claim**

Plaintiff's counsel estimates that the maximum verdict value of potential wage statement penalties for the class are the range of $2.7 to $4 million. Helland Decl. ¶ 13. As of February 2022, the parties estimated that there were approximately 900 class members. *Id.* Given the $4,000 cap on Section 226 wage statement penalties, *see* Cal. Lab. Code § 226(e)(1), potential wage statement penalties ranged from $2,700,000 (at an average of $3,000 per class member) to $3,600,000 (assuming a full $4,000 per class member), depending on class members' timing within the statutory period. *Id.* More class members have begun working for Defendant since February 2022, although those individuals would not have yet reached the statutory maximum, which is calculated by starting with a penalty of $50 for the first pay period violation and $100 for each subsequent pay period. *Id.* If the 1,361 class members have an average wage statement entitlement of $3,000, the potential wage statement penalties would total just over $4,000,000. *Id.*

Thus, the net class award of approximately $600,000 the settle the class claim regarding inadequate wage statements – after deducting the requested attorneys' fee, expenses and $100,000 PAGA allocation from the $1 million settlement fund amount, calculates to between 15-22.2% of the maximum verdict value for the wage statement claim. The proportion of the settlement offer in comparison to maximum potential liability is within the range of reasonableness for wage and hour actions in view of the litigation risks herein. *See e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (finding a wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57–58 (E.D.N.Y.2010) (settlement fund within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery); *Glass v. UBS Fin. Serv., Inc.*, No. C–06–4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd 331 Fed.Appx. 452 (9th Cir.2009) (finding a wage and hour settlement in the

range of 25 to 35% of claimed damages fair and reasonable in light of the uncertainties involved in the litigation).

### PAGA Claim

The parties allocate $100,000 to settle the PAGA claim. Plaintiff calculated maximum possible PAGA penalties at approximately $37 million. Helland Decl. ¶ 12. However, this amount is a theorical value which assumes penalties for six different wage and hour violations, totaling $700 for each pay period. *Id.* This Court has previously noted that California Law is unsettled as to whether PAGA penalties may be stacked, and has observed that in the absence of binding appellate decision on this issue, courts have gone in different directions. *See Hamilton v. Juul Labs, Inc.,* No. 20-CV-03710-EMC, 2021 WL 5331451, at *9 (N.D. Cal. Nov. 16, 2021) (noting that the assumption of stacked PAGA penalties "is subject to challenge" based on mixed precedent in federal district courts). Plaintiff observes that if PAGA penalties are limited to one per pay period, the possible recovery is closer to $5 million. Helland Decl. ¶ 12. The PAGA settlement amount is between .27% and 2% of the maximum PAGA liability. While this proportion is small, the Court's analysis of the settlement of the PAGA claim is informed by broader principles related to the litigation risks, discussed below, and the significant recovery for the Rule 23 class, which suggests that the settlement is within the range of reasonableness. *See, e.g., Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018) (affirming the superior court's imposition of .2% award of the total PAGA penalties); *Viceral v. Mistras Group, Inc.*, 2016 WL 5907869, * 9 (N.D. Cal. Oct. 11, 2016) (approving the settlement of PAGA claims for 0.15% of their maximum value where the settlement taken as a whole vindicates employee rights and may have a deterrent effect on the defendant employer); *Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL 5331451, at *10 (N.D. Cal. Nov. 16, 2021) (approving settlement of PAGA claims at a rate of 1.3-2.2% of the maximum value).

### Costs, Litigation Risks, and Rational Basis in View of the Strength of the PAGA Claim

Plaintiff faces several significant legal obstacles on the merits of her claims, both for class relief and under PAGA. First, at the time the settlement was reached, there was a substantial risk

that the Supreme Court's awaited decision in *Viking River* would adversely impact or effectively end this litigation. Now that the Supreme Court has decided *Viking River*, it appears almost certain that Plaintiff would be precluded from asserting the PAGA claim against Defendant.

In *Viking River*, the Supreme Court held that the Federal Arbitration Act preempts California law "insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1924–25 (2022). In the event that an arbitration agreement mandates arbitration of an individual PAGA claim, the arbitration agreement is enforceable and the individual PAGA claim must be compelled to arbitration. *Id.* However, the Supreme Court observed that "PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding." *Id.* So, "[w]hen an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit," and the individual's *representative* PAGA claims must also be dismissed. *Id.* at 1925.

Here, Defendant maintained throughout the action that Plaintiff Merante "executed an arbitration agreement with the Defendant, the terms of which require her to arbitrate claims against Defendant on an individual, non-class and non-collective basis." *See* Docket No. 35 at 8. Thus, if Defendant's representation is accurate, then, under *Viking River*, Plaintiff Merante would be required to pursue her individual PAGA claim in arbitration and would, therefore, lack statutory standing to pursue a PAGA claim in a representative capacity in this Court. In light of *Viking River*, then, it is highly likely that Plaintiff would not be able to proceed on her PAGA claim at all, and, therefore, there is a high likelihood that if she maintained this action, Plaintiff would face the prospect of no recovery. Were Defendant to have moved to stay proceedings during the pendency of *Viking River* or otherwise litigated this matter through June 2022, when the Supreme Court decided *Viking River*, Defendant would very likely face no liability at all in this action. *See also Alonso v. AuPairCare, Inc.*, No. 3:18-CV-00970-JD, 2018 WL 4027834, at *6 (N.D. Cal. Aug. 23, 2018) (enforcing arbitration agreement over arguments by plaintiff au pairs that that the agreements were substantively and procedurally unconscionable).

11

Indeed, although *Viking River* addressed only the relationship between PAGA and the Federal Arbitration Act, in this case, Plaintiff's class claim would also have been affected. This is because when Plaintiff initially filed this action, it included *only* a claim under PAGA. *See* Docket No. 1. Plaintiff did not pursue a class claim until *after* the parties already reached a settlement agreement, and the parties stipulated to Plaintiff raising a class claim for inadequate wage statements as part of an amended complaint for the purposes of consideration of approval of the settlement. *See* FAC, Count Two. Had Defendant moved to and obtained a stay proceedings during the pendency of *Viking River*, the initial complaint would still have been operative, and no class claims would have been asserted. Thus, in the aftermath of *Viking River*, Plaintiff likely would have been forced to arbitrate her individual PAGA claim, and the Court would have been required to dismiss the representative PAGA claim. It is unclear whether Plaintiff would have been permitted to assert, for the first time, a class claim at that juncture, when Plaintiff would have no other independent claims appropriately before this court. The likely-severe impact of *Viking River* on this litigation had it continued a mere five months beyond the date of the settlement agreement weighs heavily in favor of granting the preliminary settlement approval; in the absence of the parties' settlement agreement, there likely would not have been *any relief at all* available to the PAGA Members or Class.

Second, all of Plaintiff's claims, class and PAGA, turn on whether Defendant "employs" au pairs. Defendant disputes its status as an employer, a defense, if successful, would have left Class and PAGA members without any recovery. Plaintiff asserts that no court has yet held that an au pair program sponsor qualifies as an "employer." Mot. at 24. Some courts have found that allegations against au pair sponsor organizations as "employers" of the au pair are sufficiently plausible to survive a motion to dismiss. *See Morales Posada v. Cultural Care, Inc.*, 554 F. Supp. 3d 309, 322 (D. Mass. 2021) ("Cultural Care next argues, under Rule 12(b)(6), that Plaintiffs did not adequately allege that Cultural Care 'employs' *au pairs* because merely following federal regulations—as Cultural Care argues is the full extent of its role and the full extent of Plaintiffs' allegations—does not make it an employer. Though there is some support for the idea that merely following regulations does not make an organization an employer, the principle is not applicable

here given the extent of Cultural Care's alleged activities."); *Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1080 (D. Colo. 2016) ("That the *au pair* program has been generally described an "exchange program" is in no way probative of the Sponsors' status as a joint employer. Indeed, the doctrine of "joint employment" exists to recognize that an apparently-independent entity can still "employ" an individual for purposes of the FLSA"). Still, Plaintiff is correct in pointing out that whether an au pair sponsor program qualifies as an employer is not a settled question of law, and, thus, Plaintiff faced a degree of risk in litigating the issue.

Third, Plaintiff faced a plausible defense by Defendant that each of her state law wage and hour claims are preempted by federal law. Specifically, Defendant asserts that Plaintiff's claims – all of which arise under state law – are preempted by the U.S. Department of State Exchange Visitor Program Regulations, 22 C.F.R. § 62 *et seq*. Defendant argues that the regulations governing the sponsor program impliedly preempt the application of state and local wage laws under both field and conflict preemption. Mot. at 24. Although it does not appear that any circuits have squarely addressed this argument as applied to au pair sponsor organization, the First Circuit has held that held that state wage regulations are not preempted as applied to host families of au pairs. *See Capron v. Off. of Att'y Gen. of Massachusetts*, 944 F.3d 9, 43-44 (1st Cir. 2019). And the two district courts which found that the claims of au pairs against sponsor programs as employers could proceed beyond the pleadings stage considered and clearly rejected variations of this preemption argument as applied to sponsor organizations. *See Beltran v. InterExchange, Inc.*, 176 F. Supp. 3d 1066, 1084 (D. Colo. 2016) ("[A]s has already been discussed, the regulations implemented by the USIA expressly provided that the au pair program must conform with the FLSA, without exception; the FLSA, in turn, explicitly provides that, if a state sets a higher minimum wage than that mandated by the FLSA, employees within that state are entitled to receive that higher wage."); *Morales Posada v. Cultural Care, Inc.*, 554 F. Supp. 3d 309, 322 (D. Mass. 2021) ("Cultural Care's preemption argument, as to both field and conflict preemption, fails."). Thus, while there does appear to be a dearth of Ninth Circuit or decisions of courts in this circuit on this precise question, the persuasive authority that does exist seems to suggest that Defendant's argument is not particularly compelling. Thus, while there is some risk on this point

13

as to the viability of Plaintiff's claims, it does not appear to be overwhelming.

Fourth, specifically as to Plaintiff's class claim regarding inadequate wage statement, the Class faced uncertainty on this claim based on Section 226's requirement that a violation must be "knowing and intentional." In light of the unsettled law as to whether Defendant, as an au pair sponsor program, is an employer and, if they are an employer, whether they are subject to California labor law, Defendant could put forward a reasonable "good faith" defense to avoid liability under Section 226's "knowing and intentional" requirement. *See Wilson v. SkyWest Airlines, Inc.*, No. 19-CV-01491-VC, 2021 WL 2913656, at *3 (N.D. Cal. July 12, 2021) (recognizing good faith defense to liability for Section 226 claim); *id.* ("At the time SkyWest issued the wage statements at issue in this case, it had a good faith belief that it was not violating California law based on numerous decisions that the dormant Commerce Clause precluded applying California labor laws (including section 226) to interstate airline workers.").

Taken together, Plaintiff, the Class and PAGA Members faced significant legal risks if they were to have maintained the litigation. Most significantly, the Supreme Court's decision in *Viking River* very likely would have altogether eviscerated the PAGA claim in this action. And, because the class claim was only raised as a result of the parties' preliminary settlement agreement, in the absence of the settlement and the likely stay of proceedings that would have been put into place during the pendency of *Viking River*, the class claim would likely never have been asserted. Even if Plaintiff did assert the Section 226 class claim, Plaintiff faced a significant risk of minimal or zero recovery because Defendant has a plausible good faith defense based on the lack of binding law finding au pair sponsor organizations to be employers.

Moreover, in addition to monetary relief, the Agreement requires Defendant to notify all California host families that they: "are responsible for complying with the California Labor Code, including the obligation to pay all hours worked by the au pair at the applicable state or local minimum wage." Agreement § 63(a). This non-monetary relief weighs in favor of approval as it significantly benefits the PAGA Group and future workers by promoting PAGA's goal of encouraging compliance with the California Labor Code. *See Bedolla v. Allen*, 736 F. App'x 614, 617 (9th Cir. 2018) (affirming district court's finding that the settlement agreement as a whole

1    provided value to the class in part because it provided nonmonetary relief such as training and
2    auditing staff on compliance with labor laws); *Rincon v. W. Coast Tomato Growers, LLC*, No. 13-
3    CV-2473-JLS (KSC), 2018 WL 828104, at *4 (S.D. Cal. Feb. 12, 2018) (finding the settlement
4    term requiring institution of workplace practices to ensure compliance with wage and hour laws
5    favored a finding the settlement was fair and reasonable); *Hamilton v. Juul Labs, Inc.*, No. 20-CV-
6    03710-EMC, 2021 WL 5331451, at *10 (N.D. Cal. Nov. 16, 2021) ("The settlement "remediates
7    the alleged present violations and provides notice to current and former employees of important
8    rights. The settlement notifies more than a thousand employees that their NDAs do not prevent
9    them from exercising the rights provided by California's anti-gag rule, including the right to
10   whistle blow and speak.").

11   Finally, this case does *not* present the risk of cases where PAGA claims are brought in
12   conjunction with class claims, such that "there may be a temptation to include a PAGA claim in a
13   lawsuit to be used *merely* as a bargaining chip, wherein the rights of individuals who may not even
14   be members of the class and the public may be waived for little additional consideration in order
15   to induce the employer to agree to a settlement with the class." *O'Connor*, 201 F. Supp. 3d at
16   1134 (emphasis added). Here, this action began as a PAGA-only action and it was only *after* the
17   parties reached a settlement agreement that, as part of the settlement, the parties stipulated to
18   allowing Plaintiff to also assert a class claim. Rather than using the PAGA claim as a disposable
19   bargaining "chip," the PAGA claim *was the bargain* – without the PAGA claim, there is no case.

20   In light of these significant risks, the Court concludes that Plaintiff's results on both the
21   class and PAGA claim are within the range of reasonableness favoring preliminary approval.

22   **Attorneys' Fees, Costs and Service Award**

23   Plaintiff's counsel will file a detailed motion seeking final approval of attorneys' fees,
24   expenses and a service award for Named Plaintiff prior to the final fairness hearing. Nonetheless,
25   "courts have an independent obligation to ensure that [an attorneys' fee] award, like the settlement
26   itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*
27   *Headset*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the
28   entire class, courts have discretion to employ either the lodestar method or the percentage-of-

15

recovery method" in awarding attorneys' fees. *Id.* at 942 (citation omitted). "Because the benefit to the class is easily quantified in common-fund settlements," courts may "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.* "Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award." *Id.*

Here, Plaintiff's counsel seeks 25% of the Gross Settlement Amount, or $250,000. Agreement § 46(b). This amount is consistent with the Ninth Circuit presumptively reasonable bench mark rate. As a cross-check, Class Counsel's combined lodestar is approximately $151,000. Helland Decl. ¶ 19; Rukin Decl. ¶ 8; Dempsey Decl. ¶ 18. Accordingly, a 25% fee award would represent a lodestar multiplier of approximately 1.66. *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 C.D. Cal. 2010) ("Where appropriate, multipliers may range from 1.2 to 4 or even higher"). Class Counsel took this case on a contingency fee basis and assumed a significant risk that there would be no recovery. At this stage, the fee request is within the range of reasonableness warranting preliminary approval. So too is Plaintiff's estimate of costs of $2,405.51.

Finally, Plaintiff requests a service award of $5,000 in addition to her individual class settlement payment. The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). An incentive award of $5,000 is considered "presumptively reasonable" in this District, though courts have approved higher awards where class representatives can make a strong showing on one or more of the *Staton* factors. *O'Connor*, 2019 WL 4394401, at *14; *see also Harris v. Vector Mktg. Corp.*, No. 08-CV-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("[I]ncentive payments of $10,000 or $25,000 are quite high and . . . as a general matter, $5,000 is a reasonable amount.").

Here, Plaintiff Merante initiated this case, performed substantial work in support of the case, including attending two lengthy settlement conferences. Helland Decl. ¶ 21. She reviewed the initial Complaint and consulted with Class Counsel regarding the facts and theories in the Complaint. *Id.* She further discussed the settlement with Class Counsel on multiple occasions and

16

reviewed and approved both the Memorandum of Understanding and the Settlement Agreement. *Id.* Ms. Merante's availability and attention to this case was especially instrumental considering that many Class Members moved out of the country during the course of litigation. Mot. at 30. Thus, the Court finds a service award of $5,000 for Ms. Merante to be within the range of reasonableness, as this amount is presumptively reasonable in this District.

## IV.     CONCLUSION

In conclusion, it is therefore **ORDERED** that:

(a) The settlement class is preliminarily **CERTIFIED**. The Parties are directed to substitute the date of Preliminary Approval into the Class definition before issuing the Class Notice.

(b) The Court **APPROVES** the procedure for Settlement Class members to participate in, to opt out of, and to object to, the Settlement as set forth in the Class Notice.

(c) The Court **APPOINTS** Nichols Kaster, LLP, Rukin Hyland & Riggin LLP, and Towards Justice as Class Counsel and Plaintiff Isabella Savini Merante as the Class Representative.

(d) The Settlement Agreement and the PAGA settlement and class action settlement it embodies is fair, adequate and reasonable, and appears to be the product of arm's-length and informed negotiations. Therefore, the Agreement is hereby preliminarily **APPROVED**.

(e) The Court **APPOINTS** Analytics Consulting, LLC as the Settlement Administrator pursuant to the terms set forth in the Agreement.

(f) The Court finds the proposed notice plan constitutionally sound and **ADOPTS** the Parties' proposed notice with the modification noted above.

(g) Defendant is directed to provide the Settlement Administrator not later than twenty (20) calendar days after the date of this Order the name, most recent known email address, and any other information required in accordance with the Agreement.

(h) The Settlement Administrator is directed to email the approved Class Notice to the Class Members in accordance with the Agreement.

17

(i) A final approval hearing will be held on **December 15, 2022, at 3:00 p.m. Pacific Standard Time** to determine whether the settlement should be granted final approval as fair, reasonable, and adequate as to the Class Members. At that time, the Court will hear all evidence and arguments necessary to evaluate the Settlement, will consider Plaintiff's request for the Class Representative Enhancement Award, and Class Counsel's request for an award of Attorney's Fees and Costs.

(j) Prior to the Final Approval Hearing, Plaintiff shall file a motion for final approval of the settlement, that shall include Class Counsel's application for the Class Representative Service Payment, Administration Expenses and PAGA Civil Penalty Payment. Class Counsel shall also file a motion for an award of attorneys' fees and costs at least 35 days prior to the close of the notice period.

(k) As set forth in the Agreement, any Class Member may appear at the final approval hearing in person or by his or her own attorney and show cause why the Court should not approve the settlement, or object to the motion for awards of the Class Representative Enhancement Award and Attorney's Fees and Costs.

(l) The Court orders the following implementation schedule for further proceedings:

| | |
|---|---|
| Deadline for Defendant to provide Settlement Administrator with list and contact information of Class Members | **20 calendar days after Preliminary Approval** |
| Deadline for Settlement Administrator and email Notice of Class Settlement to Class Members ("Notice Date") | **10 calendar days from receiving list of Class Members from Defendant** |
| Deadline for Settlement Administrator to identify to Defendant which emails to Class Members were not opened or were undeliverable | **20 days calendar days after distribution of email notices** |
| Deadline for Defendant to provide Class Data Supplement to Administrator regarding contact information for Class Members who were not reached | **20 calendar days after Defendant's receipt of Administrator's identification of Class Members who were not reached** |
| Last day for Class Members to submit Requests for Exclusion or Objections | **60 calendar days from the Notice Date** |

| Settlement Administrator to provide declaration reporting on Requests for Exclusion, Objections, and other results of class notice | **At least fourteen calendar days prior to the Fairness Hearing** |
|---|---|
| Deadline to file motion for Attorneys' fees, costs, and class representative service award | **November 10, 2022** |
| Deadline to file motion for Final Approval | **November 10, 2022** |
| Fairness hearing on Final Approval and on Class Counsel Award and Service Award | **December 15, 2022 at 3:00 p.m. PST** |

This order disposes of Docket No. 45.

**IT IS SO ORDERED**.

Dated: July 25, 2022

_____
EDWARD M. CHEN
United States District Judge

19