MATTHEW C. HELLAND (SBN 250451)
*helland@nka.com*
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

H. CLARA COLEMAN (admitted *pro hac vice*)
*ccoleman@nka.com*
NICHOLS KASTER, PLLP
80 S. 8th Street, Suite 4700
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878

PETER RUKIN (SBN 178336)
*prukin@rukinhyland.com*
RUKIN HYLAND & RIGGIN LLP
1939 Harrison Street, Suite 290
Oakland, CA 94612
Telephone: (415) 421-1800
Facsimile: (415) 421-1700

RACHEL DEMPSEY (SBN 310424)
*Rachel@TowardsJustice.org*
TOWARDS JUSTICE
2840 Fairfax Street, Suite 220
Denver, CO 80207
Telephone: (720) 441-2236

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISABELLA SAVINI MERANTE, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br><br>AMERICAN INSTITUTE FOR FOREIGN STUDY, INC, a Connecticut Company,<br><br><br>　　　　Defendant. | **CASE NO.: 21-cv-03234-EMC**<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND PRIVATE ATTORNEYS GENERAL ACT (PAGA) REPRESENTATIVE ACTION SETTLEMENT**<br><br>Date: December 15, 2022<br>Time: 3:00 p.m.<br>Courtroom:　5, 17th Floor |

**NOTICE OF MOTION TO THE COURT AND TO ALL PARTIES AND THEIR**

**ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 3:00 p.m. on December 15, 2022 in the courtroom of the Honorable Edward M. Chen, Courtroom 5, 17th Floor of the United States District Court for the Northern District of California, Plaintiff will and hereby does move this Court for final certification of a Rule 23 settlement class and final approval of a Settlement reached in this Private Attorneys General Act and Rule 23 action against Defendant American Institute for Foreign Study, Inc. This motion is based on this Notice of Motion and Motion for Final Approval of Settlement, and the Declaration of Analytics LLC, all of which Plaintiff files concurrently with this Motion, and all other pleadings and papers on file in this action, and such argument as the Court may hear.

DATED:  November 10, 2022                    NICHOLS KASTER, LLP

                                            By:  s/Matthew C. Helland
                                                 Matthew Helland
                                                 Attorney for Plaintiff

# **TABLE OF CONTENTS**

TABLE OF CONTENTS................................................................................. i

MEMORANDUM OF LAW ...........................................................................1

RELEVANT BACKGROUND ........................................................................2

  I.   THE LITIGATION ................................................................2

      A.  Factual Background ...........................................................2

      B.  Procedural Background.......................................................2

      C.  Settlement Background .......................................................2

  II. THE SETTLEMENT ...........................................................3

      A.  Settlement Amount and Allocations ..................................3

      B.  Defendant's Notification Obligations ................................4

      C.  Definition of PAGA Members and Rule 23 Class...............4

          i.   PAGA Members.........................................................4

          ii.  Rule 23 Class ...........................................................5

      D.  Release of Claims ..............................................................5

          i.    Released Parties........................................................5

          ii.   Class Release ............................................................5

          iii.  PAGA Release ..........................................................5

      E.  Settlement Administrator ...................................................6

      F.  Settlement Allocations .......................................................6

  III.  RULE 23 NOTICE DISTRIBUTION ..................................7

LEGAL ANALYSIS.......................................................................................8

  I.   THE COURT SHOULD GRANT FINAL APPROVAL ...................................8

      A.  The Settlement Satisfies the Rule 23 Requirements For Purposes of
Settlement. ........................................................................9

          i.  Numerosity is Satisfied ..........................................10

ii. There are Questions of Law and Fact Common to the Class ......................10

iii. The Named Plaintiff's Claim is Typical of the Class..................................10

iv. Adequacy is Satisfied  ...............................................................................10

v. A Class Action is Superior to Other Alternatives ......................................10

B.   The Settlement is Fair, Adequate, and Reasonable and Should be Approved.
...................................................................................................................11

i.   The Strength of Plaintiffs' Case, Weighed Against the Risk, Expense,
Complexity and Likely Duration of Further Litigation, and the Risk of
Maintaining Class Action Status Through Trial, Supports Final Approval.
..................................................................................................................12

ii. The Amount Offered in Settlement Weights Strongly in Favor of Final
Approval. ...................................................................................................13

a.   The Rule 23 Claim  ...............................................................13

b.   The PAGA Claim  .................................................................14

iii.    The Stage of the Proceedings Also Favors Preliminary Approval........15

iv.    The Considerable Experience and Strongly Supportive Views of
Counsel Weigh in Favor of Preliminary Approval. ...............................15

v.    The Absence of a Government Participant Favors Approval................15

vi.    The Overwhelmingly Positive Reaction of Class Members to The
Proposed Settlement Supports Approval.................................................16

CONCLUSION.............................................................................................16

# TABLE OF AUTHORITIES

**CASES**

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ...................................... 9

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).............................................. 11

*Covillo v. Specialtys Café*, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ..................................... 16

*Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000) ....................................................... 9

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................................................... 12

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .............................................. 15

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d (N.D. Cal. 2006).............................................. 14

*Pitarro v. DSV Air & Sea, Inc.*, No. 19-CV-00849-SK, 2021 WL 6499973 (N.D. Cal. Jan. 28, 2021) ....................................................... 11

*Slezak v. City of Palo Alto*, Case No. 16-cv-3224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017) ....................................................... 15

*Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226 (N.D. Cal. Apr. 27, 2021) ....................................................... 16

*Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022)............................................ *passim*

*Wilson v. SkyWest Airlines, Inc.*, 2021 WL 2913656 (N.D. Cal. July 12, 2021)........................ 13

*Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 WL 2929988 (N.D. Cal. July 8, 2019)......... 15

## OTHER AUTHORITIES

Cal. Lab. Code § 226(e)(1) ....................................................... 13

## RULES

California Private Attorneys General Act of 2004, Labor Code § 2698, et seq. ("PAGA") .......... 2

Fed. R. Civ. P. 23(a)(1)....................................................... 9

## **MEMORANDUM OF LAW**

Plaintiff Isabella Savini Merante ("Plaintiff") moves for final approval of a settlement reached in this California Labor Code Private Attorneys General Act ("PAGA") and Rule 23 class action against American Institute for Foreign Study, Inc. d/b/a Au Pair in America ("Defendant"). Defendant does not oppose the motion.

On July 25, 2022, after careful scrutiny, this Court preliminarily approved the settlement. Dkt. No. 54. Following this Court's grant of preliminary approval notice was sent out to the 1,478 members of the settlement class. (Declaration of Richard Simmons Regarding Implementation of Settlement Notice ("Administrator Decl.") ¶ 6.)   The response was overwhelmingly positive: only two individuals requested exclusion and not a single individual objected to the settlement. (*Id.* ¶¶ 18-19); ); (Court Docket, Case No. 21-cv-03234-EMC (no objections filed)). Given this response, Plaintiff asks that the Court confirm its preliminary finding that the settlement is fair, reasonable, and adequate. *See* Dkt. No. 54.

The settlement, reached after the Supreme Court granted review in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1924–25 (2022) but prior to the Court issuing its decision, is an excellent result for the Class and the Labor Workforce Development Agency ("LWDA").   The $1,000,000 monetary settlement will provide a meaningful payment to the LWDA and significant individual settlement payments to the approximately 1,478 au pairs who fall within the settlement class. Moreover, Defendant's obligation to notify all California host families of state and local minimum wage obligations provides meaningful nonmonetary relief to current and future au pairs working in the State of California.

Therefore, Plaintiff respectfully requests the Court certify the Class for settlement purposes only and grant final approval to the Class and PAGA Settlement Agreement and Release. Plaintiff further requests the Court approve in tandem Plaintiff's previously filed Motion for Attorneys' Fees and Costs and Service Payment (Dkt. No. 56), granting a service payment in the amount of $5,000 to Plaintiff Merante, approving Class Counsel's attorneys' fees in the amount of $250,000, and approving Class Counsel's costs in the amount of $2,674.08.

**RELEVANT BACKGROUND**

**I.      THE LITIGATION**

       **A.      Factual Background**

          Defendant is a private agency authorized by the U.S. State Department to sponsor foreign nationals between the ages of 18 and 26 years old, referred to as au pairs, to provide childcare services to families in the United States. (First Amended Complaint ("FAC"), Dkt. No. 43, ¶ 3). Defendant's principal place of business is in Connecticut. (*Id*. at ¶ 8). Ms. Merante participated in the au pair program sponsored by Defendant during the period May 15, 2019, through May 12, 2021. (*Id.* at ¶ 23.) Throughout her participation in the program, Ms. Merante resided with host families located in California. *Id*.

       **B.      Procedural Background**

          On January 8, 2021, Plaintiff filed a PAGA exhaustion letter with the Labor and Workforce Development Agency ("LWDA") alleging that Defendant, as her employer, committed numerous wage and hour violations. (Dkt. No. 1, Ex. A, D, PAGA Letter). On March 15, 2021, Plaintiff filed a complaint, *Merante v. American Institute for Foreign Study, Inc*., Case No. CGC-21-590398, in the Superior Court of the State of California, County of San Francisco seeking penalties pursuant to the California Private Attorneys General Act of 2004, Labor Code § 2698, et seq. ("PAGA") for the alleged wage and hour violations. (Dkt. No. 1, Ex. A, Compl.) On April 30, 2021, Defendant removed the case to this Court. (Dkt. No. 1).

          Following the Initial Case Management Conference on August 24, 2021, this Court referred the Parties to a settlement conference with Chief Magistrate Judge Joseph C. Spero. (Dkt. No. 25.)  The Court limited the parties' discovery prior to the settlement conference to key documents. (Dkt. No. 26.) In compliance with the Court's order the parties conducted targeted discovery, including but not limited to: exchanging initial disclosures and responding to document requests and interrogatories. (Dkt. No. 45-1, Declaration of Matthew C. Helland ISO Motion for Preliminary Approval ("Helland Decl.") ¶ 3.)

       **C.      Settlement Background**

          On November 10, 2021 the Parties participated in the settlement conference with

2

Magistrate Judge Joseph C. Spero. (Dkt. No. 45-1, Helland Decl. ¶ 5.)  While the Parties failed to reach a settlement at the initial conference, the Parties agreed to exchange additional information and set a further settlement conference on February 9, 2022. (Dkt. No. 34.) Between the first settlement conference and the second settlement conference, on December 15, 2021, the United States Supreme Court granted review in *Viking River Cruises, Inc. v. Moriana*, which presented the question of whether the Federal Arbitration Act requires arbitration of representative claims, including those under California's Private Attorneys General Act ("PAGA"). *See Viking River Cruises, Inc. v. Moriana,* 142 S. Ct. 1906, 1924–25 (2022). In the midst of discussions regarding a partial stay pending the *Viking River* decision, the parties went forward with the second settlement conference on February 9, 2022. (Dkt. No. 45-1, Helland Decl. ¶ 6.) The Parties were able to successfully reach an agreement to resolve the PAGA claims. (*Id.*)  The Parties also agreed to resolve a claim for statutory penalties for failure to provide accurate wage statements under section 226 of the California Labor Code for a putative class of au pairs who worked in California, which Plaintiff added in its stipulated-to First Amended Complaint filed on March 29, 2022. (*Id.*; FAC, Dkt. No. 43.)

On June 15, 2022 Plaintiff filed an unopposed motion for preliminary approval of the settlement, and on July 21, 2022 the parties appeared before the Court for a hearing on the motion. (Dkt. Nos. 45, 52.) The Court issued its Order granting preliminary approval on July 25, 2022. (Dkt. No. 54.) On September 16, 2022 Plaintiff filed a Motion for Attorneys' Fees and Costs and Service Payment. (Dkt. No. 56.)

## II.    THE SETTLEMENT

The complete details of the Parties' agreement are contained in the Settlement Agreement ("the Settlement" or "Agreement") executed by the Parties and attached as Exhibit 1 to the Helland Declaration (Dkt. No. 45-2, Agreement). The following summarizes the Agreement's key terms.

### A.  Settlement Amount and Allocations

Under the proposed settlement, Defendant will pay $1,000,000 for the claims of 1,478 Class Members, with the following allocation:

- Class Counsel Fees Payment, in the amount of $250,000, or one-quarter of the common fund;

- Class Counsel Litigation Expenses Payment of $2,674.08 for all costs and litigation expenses incurred;

- Class Representative Service Payment of $5,000 for Plaintiff Isabella Merante;

- PAGA Allocations of $100,000 total, with $75,000 to be distributed to California's Labor Workforce Development Agency ("LWDA") and the remaining $25,000 to be paid proportionately to all PAGA members based on their number of workweeks in relation to the aggregate number of workweeks when members resided with host families during the relevant period; and

- Administration Expenses not to exceed $24,623 (Dkt. No. 45-4, Final Quote for Administration).[1]

The remaining amount – which Class Counsel calculates to be approximately $617,377 ("Net Settlement Amount") – will provide an average net payment of approximately $418.28to each class member.

### B. Defendant's Notification Obligations

As part of the Agreement, Defendant agrees to notify the host families in California who participate in Defendant's program that they: "are responsible for complying with the California Labor Code, including the obligation to pay all hours worked by the au pair at the applicable state or local minimum wage."  (Agreement § 63(a)).

### C. Definition of PAGA Members and Rule 23 Class

#### i.    PAGA Members

PAGA Members are all current and former au pairs who resided with a family in the State of California that engaged Defendant for the purpose of receiving the placement of an au pair to provide services for the Host Family from January 8, 2020 through July 25, 2022. (Agreement §§ 20, 29, 30).

---

[1] The notice program and projected class member count has changed slightly since the administrator completed its Not To Exceed bid, but Analytics has confirmed that the NTE bid is still valid. (Dkt No. 45-1, Helland Decl. ¶ 8.)

ii.    Rule 23 Class

The Parties stipulated to certification of the Rule 23 class for statutory penalties for failure to provide accurate wage statements under section 226 of the California Labor Code for purposes of settlement only. (Agreement § 45). The proposed class consists of all current and former au pairs participating in the Defendant's program who resided with Host Families in California from January 8, 2020 through July 25, 2022. (*Id.* § 9, 12).  There are 1,478 Class Members. (Administrator Decl. ¶ 5).  Defendant provided notice pursuant to the Class Action Fairness Act of 2005 ("CAFA") on July 20, 2022. (*See* Dkt. No. 51).

**D.  Release of Claims**

i.    Released Parties

The Released Parties are the named Defendant, the American Institute For Foreign Study, Inc., and its past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers. The Released Parties further includes all host families who hosted a Class Member in the Defendant's au pair program during the Class Period.

ii.    Class Release

The Rule 23 Class release extends to the alleged violations of Labor Code Section 226 for failure to provide accurate wage statements and any related claims under Section 226 that could have been alleged based on the facts and legal theories asserted in the First Amended Complaint. (Agreement § 36). The release covers the period from January 8, 2020 through July 25, 2022 Agreement. (*Id.*).  This release is appropriately tied to the claims pled in the First Amended Complaint.  The two (2) individuals who submitted a valid and timely request for exclusion from the Settlement will be excluded from the Rule 23 Class and will not release their claims. (*Id.* at § 25).

iii.    PAGA Release

The PAGA release extends to the PAGA claims that were alleged or could have been alleged based on the facts and legal theories asserted in the complaint. (Agreement § 35). The

PAGA release expressly excludes all other claims. (*Id.* at § 35). The release covers the period from January 8, 2020 through July 25, 2022. The two (2) individuals who submitted valid and timely requests for exclusion from the Settlement will be excluded from the Rule 23 Class will still be bound by the PAGA Release if they are PAGA Members. (*Id.* at § 35).

### E. Settlement Administrator

The Parties agreed to use Analytics, LLC as the Settlement Administrator ("the Administrator"). Class Counsel interviewed Analytics, LLC and one other settlement administrator about their experience with difficult international settlements like this one. (Dkt. No. 45-1, Helland Decl. ¶ 8.) It became clear that Analytics, LLC had the tools, resources, and experience to implement this settlement. (*Id.*; *see also* Dkt. No. 45-4, Analytics Consulting LLC Expert CV and Firm Resume).[2]

### F. Settlement Allocations

All PAGA Members will receive a pro rata allocation of the $25,000 Civil Penalty Payment based on the number of workweeks they resided with host families in California during the PAGA Period, in relation to the aggregate number of workweeks when members resided with host families in California during the relevant period. (Agreement § 47(c).) Individual Class Settlement Payments will be paid from the Net Settlement Amount of $617,377 and paid pursuant to the formula as follows: (i) first, using the Class Data List, the Administrator will compute the total number of Workweeks of all Participating Class Members collectively during the Class Period; this sum shall be known as the "Workweek Total;" (ii) second, the Administrator will divide the Net Settlement Amount by the Workweek Total to determine the settlement value of each eligible Workweek; this shall be known as the "Workweek Value;" (iii) third, the Administrator will multiply the number of Workweeks of a Participating Class Member during the Class period by the Workweek Value to determine the Participating Class Member's Individual Class Settlement Payment. (*Id.* at § 48(a)).

---

[2] Pursuant to Northern District of California guidelines, Class Counsel discloses that the firms, collectively, have used Analytics, LLC approximately 16 times in the past two years. (Dkt. No. 45-1, Helland Decl. ¶ 7.) In Nichols Kaster's experience, Analytics provides excellent service at a very competitive rate, and for that reason uses Analytics frequently. (*Id.*)

Defendant shall fund the QSF with the Gross Settlement Amount no later than thirty-five (35) calendar days after the Effective Date of the settlement, as defined by the Agreement. (Agreement § 58). Within fourteen (14) days after Defendant funds the QSF, the Administrator will issue payments to PAGA Members and Participating Class Members via PayPal to the email address used to distribute Notice. (*Id*.) Class Counsel proposed payment via PayPal, after consultation with multiple settlement administrators, to address the difficulty in delivering settlement payments to international class members. (Dkt. No. 45-1, Helland Decl. ¶ 9.)  Class Members who requested their PayPal payment be directed to a different email address, or provided instructions for ACH payment, will receive their payment via the method requested. (*Id.* § 52(d)(g)).

Settlement funds that are not accessed via PayPal will not revert to Defendant. Instead, there will be a second distribution of funds if the unaccessed funds are sufficient to allow payments of at least $10 per class member. Any remaining funds after a second distribution (or of the unaccessed funds are insufficient for a second distribution) will be distributed to Legal Aid at Work as *Cy Pres* recipient. (Agreement § 59.) Legal Aid at Work is a legal aid organization providing legal services to California workers. (*See* https://legalaidatwork.org/.) Although the parties and counsel do not have any current relationship with Legal Aid at Work, Class Counsel have in the past donated to Legal Aid at Work and volunteered at the organization's workers' rights clinic.

**III.    RULE 23 NOTICE DISTRIBUTION**

In accordance with the Court's preliminary approval order, Defendant provided class information to the Administrator. (Administrator Decl. ¶ 5.)   The Administrator emailed[3] the Class Email Notice, the form of which is attached as Exhibit A to the Administrator's declaration, to all 1,478 Class Members on August 25, 2022. (*Id.* ¶ 6.) The Class Email Notice included a link to the settlement administration website as well as information describing the

---

[3] As explained in Plaintiff's Motion for Preliminary Approval, the Parties forewent traditional mailed notice because it would have been expensive and ineffective in this case where Class Members worked in the United States for a short period of time on a J-1 visa, and typically returned to their home country. (*See* Dkt. No. 45, Motion for Prelim. Approval, pp. 6-7.)

settlement.  (*See* Dkt. No. 45-1, Ex. B.) The settlement website had a domain name of https://aupairsettlement.com/ and had 704 visitors in total. (Administrator Decl. ¶¶ 13, 16.) The home page of the website included the settlement notice and contact information for the Administrator. (*Id.* ¶ 15.) The website also included web pages for frequently asked questions, important deadlines, relevant court documents (including Class Counsel's filed motion for fees and costs), class counsel information, and information for payment method changes. (*Id.*) For purposes of communicating with Class Members the Administrator set up a toll-free telephone number and an e-mail address. (*Id.* ¶¶ 9-10.) The Administrator received 92 emails and 15 phone calls from Class Members with questions regarding the settlement. (*Id.* ¶ 11.) The Administrator's staff answered each question. (*Id.* ¶ 12.)  Out of the 1,478 Class Notices that were emailed, a total of 429 emails could not be confirmed as delivered and 33 were undeliverable. (*Id.* ¶ 7.)  Defendant provided the Administrator the mobile cell phone numbers, either U.S. or foreign, for all Class Members who had unopened or undeliverable email addresses. (*Id.*) On October 17, 2022 the Administrator sent a link to the Class Notice and the Settlement Website via text message to these Class Members. (*Id.*) Moreover, in this text message, Class Members were provided with the email address assigned to the settlement, so that any questions that they might have could be answered. (*Id.*) Following distribution of the text message notice there was an increase in visits to the settlement website. (*Id.* ¶ 8.)  A total of 77 Class Members selected to receive payment through direct bank account deposit rather than PayPal, and 40 Class Members updated their PayPal addresses. (*Id.* ¶ 17.)

Response to that notice was overwhelmingly positive: out of the 1,478 class members, not a single class member objected to the settlement, and only two (2) opted out of the settlement. (*Id.* ¶ 18-19); (Court Docket, Case No. 21-cv-03234-EMC (no objections filed)).

## LEGAL ANALYSIS

### I.  THE COURT SHOULD GRANT FINAL APPROVAL

In granting preliminary settlement approval, this Court determined the settlement agreement negotiated by the parties appeared to be fair, reasonable, and adequate. (Dkt. No. 130.) In the second stage of Rule 23 settlement evaluation, the court "must reach a final

determination as to whether the parties should be allowed to settle the class action pursuant to their agreed upon terms," recognizing that "[j]udicial policy strongly favors settlement of class actions." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015). The Court should confirm its preliminary finding that the settlement satisfies Rule 23 requirements is fair, adequate, and reasonable, and approve the settlement so that class members may promptly receive their settlement payments.

## A.     The Settlement Satisfies the Rule 23 Requirements For Purposes of Settlement.

A trial court has wide discretion in certifying a class for settlement purposes and will be reversed only upon a strong showing that its decision was a clear abuse of discretion. *See Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000). Rule 23(a) provides that a class action is proper only if four requirements are met: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1). In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Federal Rule of Civil Procedure 23(b). Here, Plaintiff seeks to certify the following settlement class, which matches the class pled in Plaintiff's First Amended Complaint:

> All current and former au pairs participating in the Defendant's program who resided with Host Families in California from January 8, 2020 through July 25, 2022.

*See* FAC ¶ 29.

The Court found the class definition acceptable for settlement purposes in its order granting preliminary approval to the settlement agreement[4]. Dkt No. 54, p. 5. Specifically, the Court found the requirements of Rule 23(a) were satisfied because the proposed Class is so numerous that joinder of all Class Members is impracticable, there are questions of law or fact common to the Class, the claims of Plaintiff are typical of the claims of the Class; and Plaintiff will fairly and adequately protect the interests of the Class. *Id*. The Court should confirm its preliminary finding and certify the Class for settlement purposes.

---

[4] To avoid repetition Plaintiff incorporates her extensive preliminary approval briefing on the Rule 23 requirements. *See* Dkt No. 45.

i. <u>Numerosity is Satisfied</u>

The numerosity requirement is met. As the Court recognized in its preliminary approval order, it would be impracticable to join all 1,478 Class Members, many of whom no longer reside in the United States. Dkt. No. 54, p. 5.

ii. <u>There are Questions of Law and Fact Common to the Class</u>

There are questions of law and fact common to the class governing Defendant's alleged failure to issue accurate wage statement. This Court acknowledged in its preliminary approval order that Defendant uniformly failed to provide wage statements and uniformly states that it was not required to do so because it was not the au pairs' employer and because the requirement was preempted by federal regulations. Dkt. No. 54, p. 6. These questions of law and fact are common to Class Members and predominate over any questions affecting only individual class members.

iii. <u>The Named Plaintiff's Claim is Typical of the Class</u>

As an au pair for Defendant in California during the relevant period Plaintiff Merante did not receive any wage statements from Defendant. Thus, the fact pattern relating to her wage statement claims is similar, if not identical, to that for other Class Members. As the Court stated in its preliminary approval order, "the claims of Plaintiff are typical of claims of the Class." Dkt. No. 54, p. 5.

iv. <u>Adequacy is Satisfied</u>

The Class Members have been adequately represented in this case. Plaintiff Merante has been dedicated to the case throughout, having provided valuable information, produced relevant documents, and participated in both settlement conferences. (Dkt No. 45-1, Helland Decl. ¶ 21.) The Court should confirm its preliminary finding that she adequately protects the interests of the class. Dkt. No. 54, p. 5. Further, Class Counsel, which the Court recognized "all hav[e] extensive experience in representing employees in class action suits" are adequate to represent the class. *Id.* at 6.

v. <u>A Class Action is Superior to Other Alternatives</u>

In addition to finding Plaintiff satisfied the four prerequisites of Rule 23(a), the Court also preliminarily found that questions of law or fact common to class members predominate

1   over any question affecting only individual members, and that a class action is superior to other

2   available methods for fairly and efficiently adjudicating the controversy. Dkt. No. 54, pp. 6-7.

3   Specifically, in finding that the predominance requirement is satisfied and that a class action is

4   superior this Court acknowledged that "the legality of Defendant's failure to provide wage

5   statements can be settled on a class-wide basis only once rather than many separate times" and

6   that "the alternative method of resolution here would require over 1,000 individual claims." (*Id*.

7   at p. 7.) Those conclusions hold true at this stage of the approval process.

8        For the foregoing reasons, the Court should confirm its preliminary finding that the

9   criteria for class certification are met and certify the class for settlement purposes.

10       **B.**    **The Settlement is Fair, Adequate, and Reasonable and Should be Approved.**

11        This Court preliminarily found the PAGA and Rule 23 settlement fair, adequate, and

12   reasonable. Dkt. No. 54, p. 8. The factors it balanced in reaching that finding include:

13        (1) the strength of the plaintiffs' case;

14        (2) the risk, expense, complexity, and likely duration of further litigation;

15        (3) the risk of maintaining class action status throughout the trial;

16        (4) the amount offered in settlement;

17        (5) the extent of discovery completed and the stage of the proceedings;

18        (6) the experience and views of counsel;

19        (7) the presence of a governmental participant; and

20        (8) the reaction of the class members to the proposed settlement.

21   *See* Dkt. No. 54, pp. 7-15; *see also Pitarro v. DSV Air & Sea, Inc.,* No. 19-CV-00849-SK, 2021

22   WL 6499973, at *1 (N.D. Cal. Jan. 28, 2021) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361

23   F.3d 566, 575 (9th Cir. 2004) (listing and describing the factors)). The Court further found the

24   settlement is the product of serious, arms-length negotiations conducted after investigation and

25   discovery, noting "there appear to be no red flags of collusion." Dkt. No. 54, p. 8. Plaintiff

26   incorporates by reference her preliminary approval briefing on these factors and additionally

27   addresses the overwhelmingly positive reaction of proposed class members to the settlement. As

28   detailed below, the factors weigh heavily in favor of granting final approval.

i.  <u>The Strength of Plaintiffs' Case, Weighed Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Through Trial, Supports Final Approval.</u>

The first three factors are addressed together and require the court to assess the plaintiff's "likelihood of success on the merits and the range of possible recovery" versus the risks of continued litigation and maintaining class action status through the duration of the trial. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). The Court preliminarily found these three factors support approval. The Court should confirm that finding now.

While Plaintiff believes strongly in the merits of this case, she faced substantial risks in continuing to litigate the PAGA and class-based wage statement claims. The Court recognized such risks in its Order granting preliminary approval, stating that at the time of the settlement there was a substantial risk that the Supreme Court's *Viking River* decision would adversely impact the ligation and noting that following issuance of the decision "it appears almost certain that Plaintiff would be precluded from asserting the PAGA claim against Defendant." (Dkt No. 54, p. 11.)  In *Viking River*, the Supreme Court held that the Federal Arbitration Act preempts California law, precluding "division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." *Viking River Cruises, Inc.*, 142 S. Ct. at 1924–25. Plaintiff Merante executed an arbitration agreement with Defendant that required her to arbitrate claims on an individual, non-class and non-collective basis. The Court reasoned on preliminary approval that, if litigation had continued, "it is highly likely that Plaintiff would not be able to proceed on her PAGA claim at all." Dkt. No. 54, p. 11. As this Court acknowledged, "the likely-severe impact of Viking River on this litigation" weighs heavily in favor of granting approval of the settlement. (*Id.*)

Second, all of Plaintiff's claims hinge upon whether Defendant employs au pairs. Defendant hotly disputes its status as an employer – a defense which if successful would have ultimately left aggrieved employees and class members with no recovery. Although Plaintiff believes there is merit to the employer status argument, Plaintiff recognizes that no court has yet

held that au pair program sponsors qualify as employers. As this Court found in its preliminary approval order, the lack of any previous case authority is a further risk to ligation. Dkt. No. 54, p. 13.

Third, in addition to strongly contesting employer status, Defendant had a plausible defense that state law wage and hour claims were preempted by federal law. Specifically, Defendant argues that the regulations governing the sponsor program impliedly preempt the application of state and local wage laws under both field and conflict preemption. While Plaintiff disagrees with such legal reasoning, and the Court found "Defendant's argument is not particularly compelling," there is still some risk on this point and if successful the argument would bar this litigation. (Dkt No. 54, p. 13.)

Lastly, Plaintiff faced uncertainty regarding Section 226's requirement that a violation be knowing and intentional. Defendant would likely argue it had a good faith belief that it was not an employer, and thus that any violation of Section 226 was not "knowing and intentional." *See, e.g., Wilson v. SkyWest Airlines, Inc.*, 2021 WL 2913656, at *3 (N.D. Cal. July 12, 2021) (recognizing a good faith defense to wage statement liability).

These legal risks, most significantly *Viking River*, would have been substantial obstacles to Plaintiff's success had the litigation continued. The risks thus weigh in favoring of granting final approval of the settlement.

ii.    <u>The Amount Offered in Settlement Weights Strongly in Favor of Final Approval.</u>

a.    *The Rule 23 Claim*

As detailed in Plaintiff's motion for preliminary approval, Plaintiff's counsel estimates that the maximum verdict value of potential wage statement penalties for the class are in the range of $2.7 to $4 million. (*See* Dkt. No. 45-1, Helland Decl. ¶ 13.) As of February 2022, the parties estimated that there were approximately 900 class members. (*Id.*) Given the $4,000 cap on Section 226 wage statement penalties, *see* Cal. Lab. Code § 226(e)(1), potential wage statement penalties ranged from $2,700,000 (at an average of $3,000 per class member) to $3,600,000 (assuming a full $4,000 per class member), depending on class members' timing within the statutory period. (*Id.*) If class members have an average wage statement entitlement of

$3,000, the potential wage statement penalties would total just over $4,000,000. (*Id.*) Thus, the net class award of approximately $600,000 the settle the class claim regarding inadequate wage statements – after deducting the requested attorneys' fee, expenses and $100,000 PAGA allocation from the $1 million settlement fund amount, calculates to between 15-22.2% of the maximum verdict value for the wage statement claim. As the Court found in its order granting preliminary approval, the proportion of the settlement in comparison to maximum liability is within the range of reasonableness in view of litigation risks. Dkt. No. 54, p. 8.

### b. The PAGA Claim

The parties allocated $100,000 to settle the PAGA claim. The Court's analysis in granting preliminary approval of the PAGA settlement was guided by several overlapping policy-based factors, including (1) protecting workers and law-abiding employers by ensuring compliance with the State's labor standards and deterring future Labor Code violations; (2) collecting civil penalties to augment the State's labor enforcement capabilities and educating workers; and (3) ensuring settlement has a rational basis in view of the strength and full value of the PAGA claims. Dkt. No. 54, p. 9 (citing *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d at 1132–35.) Plaintiff's counsel calculated maximum possible PAGA penalties at approximately $37 million. However, as this Court noted in performing its analysis, "California law is unsettled as to whether PAGA penalties may be stacked, and has observed that in the absence of binding appellate decision on this issue, courts have gone in different directions." Dkt No. 54, p. 10. If PAGA penalties are limited to one per pay period then the approximate maximum recovery is closer to $5 million. (Dkt. No. 45-1, Helland Decl. ¶ 12.) The Court preliminarily found the settlement amount between .27% and 2% of the maximum PAGA liability reasonable given the litigation risks and significant recovery for the Rule 23 class. Dkt. No. 54, p. 10. Specifically, the Court found that while the PAGA proportion is small, the settlement as a whole—including the significant recovery for the Rule 23 class--fell within the range of reasonableness. *Id.* Moreover, in granting preliminary approval of the PAGA settlement the Court found the nonmonetary relief requiring Defendant notify all California host families of their wage obligations "weighs in favor of approval as it significantly benefits the PAGA Group and future workers by promoting

PAGA's goal of encouraging compliance with the California Labor Code" Dkt. No. 54, p. 14.)

iii.  The Stage of the Proceedings Also Favors Preliminary Approval.

Prior to mediation the parties conducted sufficient discovery to make an informed decision about settlement. The extent of discovery is relevant in determining the parties' knowledge of the case, but "as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.' " *Wilson v. Tesla, Inc*., No. 17-cv-03763-JSC, 2019 WL 2929988, at *8 (N.D. Cal. July 8, 2019) (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). As Plaintiff explained in her motion for preliminary approval, in advance of mediation Plaintiff investigated the claims, evaluated Defendant's liability, and determined class-wide damages. The discovery included exchanging initial disclosures and responding to document requests and interrogatories. Such discovery provided both sides with the requisite information to evaluate the merits of the case and related exposure. Thus, this factor also weighs in favor of final approval.

iv.  The Considerable Experience and Strongly Supportive Views of Counsel Weigh in Favor of Preliminary Approval.

Class and Defendant's Counsel are experienced attorneys who are familiar with PAGA, wage and hour class actions, and the legal and factual issues of this case. (Dkt No. 45-1, Helland Decl. ¶ 11.) "In determining whether a settlement is fair and reasonable, the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases." *Slezak v. City of Palo Alto*, Case No. 16-cv-3224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017). Class Counsel fully supports the resulting settlement as fair, reasonable, and adequate given the risks of litigation. (Dkt. No. 45-1, Helland Decl. ¶ 22; Dkt. No. 45-5, Rukin Decl. ¶ 6; Dkt. No. 45-7, Dempsey Decl. ¶ 23.) This factor weighs in favor of final approval.

v.  The Absence of a Government Participant Favors Approval.

At the outset of the case Plaintiff exhausted with the LWDA with no response. Plaintiff filed the settlement agreement with the LWDA in conjunction with filing the preliminary approval motion. (Dkt. No. 45-1, Helland Decl. ¶ 23.) At the moment, there is no governmental

entity involved other than the LWDA which so far has chosen not to intervene. This factor also favors final approval.

vi.  The Overwhelmingly Positive Reaction of Class Members to The Proposed Settlement Supports Approval.

The reaction of the Rule 23 class was overwhelmingly positive. Out of 1,478 Class Members, only two submitted a requested for exclusion and not a single individual objected. (Administrator Decl. ¶¶ 18-19; Court Docket 21-cv-03234-EMC (no objections filed).)  The miniscule opt-out rate of .001%, coupled with the absence of objections, strongly supports final approval of the settlement. A relatively low percentage of objectors or opt-outs is a strong sign of fairness that weighs in favor of approval. Further, the Administrator took steps to ensure that all class members received notice, contacting all class members with unopened or undeliverable emails by text message as well. (*Id.* ¶ 7.) The lack of objection or rejection to the agreement weighs heavily in favor of final approval. *See Stonehocker v. Kindred Healthcare Operating LLC*, 2021 WL 1643226, at *8 (N.D. Cal. Apr. 27, 2021) (describing a settlement with "only three opt-outs and no objections" as an "overwhelmingly positive" response); *Covillo v. Specialtys Café*, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (38% participation with no objections and no opt-outs "strongly favors approval"). The almost unanimous approval from the participating Class Members in the instant case strongly supports final approval.

## CONCLUSION

The Court has already found, on a preliminary basis, that the settlement is fair, reasonable, and adequate. Since that decision the Class Members have received notice of the settlement – with only 2 out of 1,478 Class Members requesting exclusion and no individual objecting. The Court should make its preliminary decision final and grant approval of the settlement in all respects.

DATED: November 10, 2022          NICHOLS KASTER, LLP

By: s/Matthew C. Helland
    Matthew Helland

RUKIN HYLAND & RIGGIN LLP
TOWARDS JUSTICE
Attorneys for Plaintiff